TTX COMPANY, Plaintiff-Appellee, v. DOUGLAS L. WHITLEY, Director of the Department of Revenue, *et al.*, Defendants (William T. Lundeen, Chief Counsel of the Department of Revenue, Contemnor-Appellant).

First District (5th Division)   No. 1—96—3120

Opinion filed March 13, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solic-

itor General, and Karen J. Dimond, Assistant Attorney General, of counsel), for appellant.

Mayer, Brown & Platt, of Chicago (Frederic L. Hahn, of counsel), and Baker, Donelson, Bearman & Caldwell, of Washington, D.C. (James W. McBride, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

William T. Lundeen, in his capacity as chief counsel of the Illinois Department of Revenue (Department), appeals the circuit court's order finding him in contempt of court after he refused to comply with a discovery order requiring the Department to disclose information found in income tax returns belonging to other state taxpayers. On appeal, Lundeen raises as issues whether: (1) the Illinois Income Tax Act (35 ILCS 5/917(a) (West 1994)) (section 917(a)) prohibited him from producing the information requested in the discovery order; (2) the information was discoverable as relevant to the cause of action; (3) the scope of the circuit court's order to produce was overly burdensome; and (4) the circuit court's order finding him in contempt should be vacated.

Plaintiff, TTX Company (TTX), is a Delaware corporation with its principal place of business in Chicago, Illinois. On its federal income tax returns, TTX listed its business activity as "Leasing Railroad Cars." The company, originally named Trailer Train Company, was formed by national railroads in 1956, which pooled their resources to establish a nationwide fleet of flatcars, to help them lower costs and compete more effectively with the trucking industry for the shipping of freight. By 1991, TTX and its subsidiaries operated and maintained a fleet of almost 100,000 rail cars, which are leased to railroads pursuant to a pooling agreement approved by the Surface Transportation Board (STB) (previously known as the Interstate Commerce Commission). The company's objective is to "provide standardized railroad equipment and related services to the nation's railroads at the lowest possible car hire rates."

All railroads in possession of TTX cars pay charges set by TTX's rate policy, which provides that TTX will charge only what it needs to pay its expenses. TTX made no attempt to maximize its profits or pay a dividend to its shareholders during the period audited by the Department. Although the STB does not regulate TTX as a common carrier, the agency monitors the company's pooling activities pursuant to 49 U.S.C. § 11322 (1994).

TTX calculated its Illinois income taxes for the calendar year 1984 using a three-factor apportionment formula pursuant to section

304(a) of the then-applicable Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(a)) (section 304(a)). On January 9, 1986, after reviewing TTX's 1984 income tax return, the Department sent TTX a notification requesting more information. A handwritten note at the bottom of the notice[1] stated: "It appears you should be filing and apportioning your income as a transportation company. Please explain why a three factor formula is used ***. Please respond within 60 days." After reading this notation, and examining the relevant statutes, TTX began calculating its Illinois income taxes using a single-factor transportation formula, pursuant to section 304(d) of the Illinois Income Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 3—304(d)) (section 304(d)), which applies to business income derived from furnishing transportation services.

In 1991, the Department audited the combined tax returns of TTX and its subsidiaries for 1987, 1988, and 1989 (audit period), and concluded that TTX was not furnishing transportation services within the meaning of section 304(d) and incorrectly used the single-factor transportation formula to calculate its income taxes. The Department informed TTX that it should have used the three-factor formula. Applying this formula, on July 21, 1992, the Department issued a notice of deficiency to TTX in the amount of $852,508. The Department also assessed a penalty against TTX for failing to pay its entire tax liability for the audit period by the due date.

TTX filed a notice of payment under protest and deposited the entire amount due, $1,104,150, which included the alleged deficiency plus interest and penalties, into a protest fund. See 30 ILCS 230/1 et seq. (West 1992). TTX then filed the present action, requesting a declaration that TTX is a transportation company as defined by section 304(d), and a judgment in favor of TTX in the amount of the protest payment. In an agreed preliminary injunction order, defendants were prohibited from transferring TTX's payment out of the protest fund.

In its second set of interrogatories, TTX requested defendants to "identify each taxpayer who apportioned income to Illinois using the single factor transportation formula" during the audit period. Defendants objected to the request, arguing that it sought confidential information about other taxpayers, was unduly burdensome, and did not seek information reasonably calculated to lead to the discovery of admissible evidence.

Defendants also moved for summary judgment, arguing that as a

---

[1]This handwritten note was not signed. The parties later stipulated that Connie Franklin, a former tax analyst for the Department, made the notation.

matter of law TTX was required to use the three-factor formula when calculating its state income taxes during the audit period. Defendants asserted that TTX did not qualify for the single-factor formula because it did not transport passengers or freight. In response, TTX argued that because it was at least indirectly involved in furnishing transportation services, questions of fact existed as to whether it qualified for application of the single-factor formula, precluding summary judgment.

TTX moved to compel defendants to answer the second set of interrogatories. The circuit court continued defendants' summary judgment motion pending TTX's motion to compel. Subsequently, in a written order, the court denied the motion to compel "in so far [sic] as it would require the Department to produce a list of taxpayers who file income tax returns in Illinois using the single factor transportation apportionment formula." The court found that TTX "has not made any allegations in its complaint with respect to disparate treatment, violation of due process and/or equal protection." Nonetheless, the court wanted to "satisfy itself" that the Department applied section 304(d) to other taxpayers in the same manner it applied that section to TTX during the audit years.

The circuit court ordered TTX to produce a list of 200 taxpayers it believed might be using the single-factor formula when filing their income tax returns. From that list, the Department was ordered to compile a second list identifying which of those taxpayers actually used the single-factor formula; and a third list identifying taxpayers from the second list who were audited during the audit period. The Department would give these lists to the court for review. The court further required the Department to prepare an affidavit explaining the criteria used to determine if a taxpayer may use the single-factor formula and whether the criteria were applied in an equal manner to all taxpayers being audited during the audit period. Lastly, the court ordered the Department to furnish for *in camera* inspection any documentation necessary to support the facts alleged in the affidavit.

After the Department indicated that it would not comply with the order, the circuit court ordered it to "provide a detailed affidavit" explaining its position. In response, Lundeen prepared an affidavit in which he asserted that the discovery order violated the Income Tax Act and the information being requested was irrelevant to TTX's claim. Lundeen also detailed how complying with the Act would place an enormous burden on the Department's resources.

The circuit court held Lundeen in contempt for refusing to comply with the discovery order and fined him $25 per day until he complied. The court stayed the contempt sanctions pending resolution of the Department's appeal.

## I

■ Lundeen argues that the circuit court abused its discretion in finding him in contempt of court for refusing to comply with the discovery order. The circuit court retains great latitude in defining the scope of discovery. *In re Marriage of Daniels*, 240 Ill. App. 3d 314, 324, 607 N.E.2d 1255 (1992). A discovery order will not be disturbed absent abuse of discretion, although the court does not have discretion to compel disclosure of privileged information or that otherwise exempted by statute or common law. *Daniels*, 240 Ill. App. 3d at 324.

■ A contempt proceeding is the appropriate method by which a party may test the correctness of a discovery order. *Daniels*, 240 Ill. App. 3d at 323-24. Pursuant to Supreme Court Rule 219(c), the circuit court may use contempt proceedings to compel a party to obey a discovery order. 134 Ill. 2d R. 219(c). The imposition of such a sanction will not be disturbed on review absent abuse of discretion. *Daniels*, 240 Ill. App. 3d at 323.

## II

■ Lundeen first argues that section 917(a) prohibits the Department from disclosing the information requested in the discovery order. Section 917(a) provides:

"Confidentiality. Except as provided in this Section, all information received by the Department from returns filed under this Act, or from any investigation conducted under the provisions of this Act, shall be confidential, *except* for official purposes within the Department or pursuant to official procedures for collection of any State tax ***, and any person who divulges any such information in any manner, *except* for such purposes and pursuant to order of the Director or in accordance with a proper judicial order, shall be guilty of a Class A misdemeanor." (Emphasis added.) 35 ILCS 5/917(a) (West 1994).

■ It is a fundamental rule that when construing a statutory provision, this court must "ascertain and give effect to the true intent and meaning of the legislature." *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 194, 595 N.E.2d 561 (1992); *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 364, 522 N.E.2d 1219 (1988). The first step in determining legislative intent is to examine the language of the statute; unambiguous terms, when not specifically defined, must be given their plain and ordinary meaning. *Hernon*, 149 Ill. 2d at 194-95. When the language contains a general prohibition along with enumerated exceptions, the prohibition applies in all places not specifically excepted. *People ex rel. DiFanis v. Barr*, 83 Ill. 2d 191, 199, 414 N.E.2d 731 (1980).

■ The first part of section 917(a) states the general rule that the Department must keep all information found in tax returns confidential, with some exceptions. TTX finds two exceptions relevant to the present case. First, TTX interprets the phrase "in accordance with a proper judicial order" to permit the Department to reveal taxpayer information if disclosure is required by a court order. 35 ILCS 5/917(a) (West 1994). TTX's argument fails to consider this phrase within the context of the statute as a whole. When interpreting the scope of a statute, "the entire statute must be considered." *Decatur*, 122 Ill. 2d at 364. Moreover, statutes should be construed so that no term is rendered superfluous or meaningless. *Niven v. Siqueira*, 109 Ill. 2d 357, 365, 487 N.E.2d 937 (1985).

Considered in its entirety, section 917(a) contains two separate rules, each with its own exceptions. The first rule requires the Department to keep tax return information confidential, but states exceptions where disclosure of such information would be permitted. The second rule imposes a criminal penalty on parties who release confidential information, providing that they shall be guilty of a misdemeanor. An exception to this rule exists if the information is released "in accordance with a proper judicial order." 35 ILCS 5/917(a) (West 1994). Thus, if a Department employee discloses information from a tax return pursuant to a court order, he is immune from criminal prosecution even though he violated the first part of section 917(a).

The plain language of section 917(a) reveals that the judicial order exception was not intended to be part of the confidentiality rule. Its placement in the statute confirms the legislature's intention to provide an exception to the criminal culpability rule also found in section 917(a). A contrary interpretation would allow courts to order the release of tax return information whenever such information was found relevant to the case. As a result, the judiciary, rather than the legislature, would be deciding what information may be released, in direct contravention of section 917(a)'s confidentiality rule.

TTX compares section 917(a) to the confidentiality rules found in other federal and state tax laws, noting that they provide limited exceptions allowing taxpayer information to be released pursuant to a judicial order. The language of those tax laws, however, is much different from the language found in section 917. For instance, section 6103 of the Internal Revenue Code (Code) contains an extensive list of exceptions to the confidentiality rule. 26 U.S.C. § 6103(a) (1994). One exception provides for the disclosure of information in a "Federal or State judicial or administrative proceeding pertaining to tax administration, *** if the treatment of an item reflected on such

return is directly related to the resolution of an issue in the proceeding." 26 U.S.C. § 6103(h)(4)(B) (1994). A federal court applied this exception to a case involving facts similar to the present case. *Beresford v. United States*, 123 F.R.D. 232 (E.D. Mich. 1988).

TTX argues that the *Beresford* decision is persuasive here. The *Beresford* court, however, was interpreting an exception to the federal confidentiality rule that is not present in section 917. Another federal case cited by TTX, *McSurely v. McAdams*, 502 F. Supp. 52 (D.D.C. 1980), also is unpersuasive because it involved a nontax civil suit. See *Beresford*, 123 F.R.D. at 234.

The confidentiality rules promulgated by other states are similarly distinguishable. See Ind. Code § 6—8.1—7—1(a) (1989); Ohio Rev. Code Ann. § 5747.18 (Anderson 1989). The language of those statutes contains important differences, in that they specifically create an exception to the confidentiality rule for disclosures made in accordance with a judicial order. The Illinois statute contains such an exception only to the extent that Department employees are immune from criminal prosecution for violating the confidentiality rule. The exception does not apply to the confidentiality rule itself.

TTX next argues that an exception found in the first clause of section 917(a) permits disclosure of the tax return information TTX requested. The provision requires information to be kept confidential *unless* it is disclosed "pursuant to official procedures for collecting of any State tax." 35 ILCS 5/917(a) (West 1994). TTX contends that the litigation of its complaint against the Department should be considered an official procedure for the collection of a state tax.

The Income Tax Act provides that "[e]xcept as otherwise expressly provided or clearly appearing from the context, any term used in this Act shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code." 35 ILCS 5/102 (West 1994); see also *Bodine Electric Co. v. Allphin*, 70 Ill. App. 3d 844, 847, 389 N.E.2d 168 (1979), *aff'd*, 81 Ill. 2d 502, 410 N.E.2d 828 (1980). Section 6103(h)(1) of the Code authorizes disclosure of federal tax return information to federal employees "whose official duties require such inspection or disclosure for tax administration purposes." 26 U.S.C. § 6103(h)(1) (1994). This information also may be disclosed to state agencies responsible for the administration of state tax laws. 26 U.S.C. § 6103(d) (1994). The term "tax administration" is defined to include the "assessment, collection, enforcement, [and] litigation" of taxes and tax laws. 26 U.S.C. § 6103(b)(4)(B) (1994). Thus, the collection of taxes comprises a portion of the taxing agency's responsibilities with regard to the administration of tax laws.

The claim involved in the present case is not part of the

Department's administration of the state's tax laws. This case instead involves a private taxpayer, TTX, seeking a reduction in the taxes assessed against and owed by it, and a refund of the money placed in escrow. Such a claim does not constitute an official procedure for the collection of state taxes and does not allow for disclosure of the information requested in the present case.

The parties next dispute whether information that must be kept confidential under section 917(a) is nonetheless discoverable. Lundeen compares section 917(a) to other state statutes that he argues "illustrate the legislative intent to grant confidentiality." For instance, the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 1994)) exempts taxpayer information from the list of public records that must be made available to the public. This exemption is limited, however, in that the information must be disclosed if it "is otherwise required by State statute." 5 ILCS 140/7(1)(b)(iv) (West 1994). In addition, FOIA addresses disclosures made to the public generally, not disclosures made in response to a discovery order. *Daniels,* 240 Ill. App. 3d at 326.

When considering statutes containing confidentiality rules similar to section 917(a), courts have held that documents subject to those statutes could not be disclosed during discovery or at trial. *Niven,* 109 Ill. 2d at 366; *Arnold v. Thurston,* 240 Ill. App. 3d 570, 574, 608 N.E.2d 418 (1992); *People v. Ellis,* 128 Ill. App. 3d 180, 183, 470 N.E.2d 524 (1984). Those cases are distinguishable from the present case, however, because the plain language of the statutes they interpreted specifically stated that the confidential documents were inadmissible in court. 625 ILCS 5/11—412 (West 1994); 735 ILCS 5/8—2102 (West 1994); 820 ILCS 405/1900A (West 1994).

Although section 917 does not contain a comparable provision stating that information in tax returns is inadmissible or nondiscoverable, its language requires confidentiality and does not create an exception for disclosure pursuant to a court order. In the absence of a statutory exception to the confidentiality rule, permitting disclosure of tax return information pursuant to the discovery order would violate the explicit prohibition of such disclosures as stated in section 917(a).

### III

■ Lundeen also asserts that the information requested is not discoverable because it is irrelevant to the pending action. Great latitude is allowed in the scope of discovery, and the concept of relevance is broader for discovery purposes than for purposes of admitting evidence at trial. *Leeson v. State Farm Mutual Automobile*

*Insurance Co.*, 190 Ill. App. 3d 359, 365, 546 N.E.2d 782 (1989). Relevance for discovery purposes includes not only what is admissible at trial, but also that which leads to admissible evidence. *Pemberton v. Tieman*, 117 Ill. App. 3d 502, 504-05, 453 N.E.2d 802 (1983). Discovery should be denied, however, when there is insufficient evidence that the requested discovery is relevant. *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.*, 230 Ill. App. 3d 308, 317, 594 N.E.2d 1190 (1992).

■ In the present case, the information requested in the discovery order is irrelevant to the issues presented. TTX alleged in its complaint that it properly applied the single-factor transportation formula, instead of the three-factor formula, when calculating its state income taxes. The issue before the circuit court was whether TTX qualified as a transportation company under section 304(d). Whether other companies unrelated to TTX calculated their income taxes as transportation companies, and whether they were audited for doing so, is irrelevant to the issue of whether TTX should be designated a transportation company for income tax purposes. The relevant question is not whether TTX was treated differently from other companies or whether the Department is interpreting correctly section 304 with regard to other companies.

Evidence of which corporate taxpayers are using the single-factor formula would prove only that the Department might or might not be enforcing section 304(d) in a consistent manner. As the circuit court specifically noted, however, TTX did not allege disparate treatment or violation of its due process or equal protection rights. TTX asserts that if it obtains evidence during discovery that would establish a basis for an equal protection claim, TTX could amend its complaint to add that claim. TTX has not alleged a single fact that would support an equal protection claim and fails to show how the information sought in the interrogatory would state a constitutional violation. Whether the Department violated TTX's equal protection rights by allowing other companies to use the single-factor formula is purely speculative. The information requested by TTX is not discoverable on the basis of a potential future, unsubstantiated equal protection claim.

The cases cited by TTX in support of its relevance argument are not on point. See *Vitacco v. Eckberg*, 271 Ill. App. 3d 408, 414, 648 N.E.2d 1010 (1995); *Snyder v. Lowrey*, 141 Ill. App. 3d 30, 33, 489 N.E.2d 899 (1986); *Harris Trust & Savings Bank v. Joanna-Western Mills Co.*, 53 Ill. App. 3d 542, 557, 368 N.E.2d 629 (1977). TTX is not seeking to introduce tax information from a party to the case; rather, TTX is seeking tax information from the Department about private

third parties. Moreover, the instant case does not involve questions of custom and practice, or issues of an item's fair market value.

TTX argues that the information sought in its interrogatories is relevant to determining precisely how the Department has interpreted section 304(d). An agency's interpretation of a statute it is charged with administering is relevant, but not binding. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995). In this case, review of tax returns filed by other taxpayers is unnecessary to determine the Department's construction of section 304(d). The Department already has explained its interpretation of section 304(d) during the litigation of this case. The Department believes that TTX may not use that provision to calculate its income taxes because it does not qualify as a transportation company, in that it does not transport passengers or freight. That reading of section 304(d) as it applies to TTX is the issue in this case, rather than the Department's interpretation of section 304(d)'s applicability to other taxpayers.

In light of the foregoing, Lundeen's argument that the discovery order was oppressive and placed an undue burden on the Department need not be addressed.

For the reasons set forth above, the circuit court's order requiring Lundeen to comply with its discovery order is reversed, and the contempt order and fine are vacated.

Order reversed; contempt order and fine vacated.

HOFFMAN, P.J., and HOURIHANE, J., concur.