# Illinois Official Reports

## Supreme Court

---

### *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217

---

| | |
|---|---|
| Caption in Supreme Court: | CAROL KLAINE *et al.*, Appellees, v. SOUTHERN ILLINOIS HOSPITAL SERVICES, d/b/a Memorial Hospital of Carbondale and St. Joseph Memorial Hospital, Appellant. |
| Docket No. | 118217 |
| Filed | January 22, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Williamson County, the Hon. Brad Bleyer, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. Cause remanded. |
| Counsel on Appeal | Kara L. Jones, of Feirich/Mager/Green/Ryan, of Carbondale, for appellant. |
| | Thomas Q. Keefe III, of Keefe & Keefe, P.C., of Belleville, for appellees. |
| | Richard R. King, Robert John Kane and Sherri DeVito, of Illinois State Medical Society, of Chicago, and Mark D. Deaton, of Illinois Hospital Association, of Naperville, for *amici curiae* Illinois State Medical Society *et al*. |
| | Patrick E. Dwyer III and Patrick E. Dwyer II, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1		Defendant Southern Illinois Hospital Services, d/b/a St. Joseph Memorial Hospital and Memorial Hospital of Carbondale (SIHS), appeals the judgment of the appellate court, which affirmed the Williamson County circuit court's finding that certain documents sought in discovery by plaintiffs Carol and Keith Klaine were not privileged and must be produced. 2014 IL App (5th) 130356. For reasons that follow, we affirm the appellate court's judgment and remand for further proceedings.

¶ 2		BACKGROUND

¶ 3		Carol and Keith Klaine filed a medical malpractice lawsuit against Frederick Dressen, D.O. (Dr. Dressen) and Southern Illinois Medical Services, d/b/a The Center for Medical Arts. In an amended complaint, plaintiffs added a claim against Southern Illinois Hospital Services, d/b/a St. Joseph Memorial Hospital and Memorial Hospital of Carbondale (SIHS), for the negligent credentialing of Dr. Dressen.

¶ 4		Plaintiffs served discovery requests on SIHS and, in response, SIHS provided over 1,700 pages of documents. SIHS refused, however, to provide certain documents, which it listed in a privilege log, as required by Illinois Supreme Court Rule 201(n) (eff. July 1, 2014), asserting that the withheld documents were privileged pursuant to, *inter alia*, the Medical Studies Act (735 ILCS 5/8-2101 (West 2012)) and the Health Care Professional Credentials Data Collection Act (Credentials Act) (410 ILCS 517/1 *et seq.* (West 2012)).

¶ 5		Upon plaintiffs' motion, SIHS submitted the documents which it claimed to be privileged to the circuit court for *in camera* review. After reviewing the documents, the circuit court agreed with SIHS that all of the documents were privileged, with the exception of those documents contained in "Group Exhibit B," "Group Exhibit F," and "Group Exhibit J." SIHS complied with the court's order compelling the production of documents in Group Exhibit B, but continued to maintain that the documents in Group Exhibit F and Group Exhibit J were privileged. Group Exhibit F consists of Dr. Dressen's three applications to SIHS for staff privileges dated December 1, 2011 (47 pages), February 19, 2009 (37 pages), and August 13, 2010 (33 pages). Group Exhibit J contains "procedure summaries and case histories" that, essentially, list the various surgical procedures that Dr. Dressen performed at SIHS hospitals.

¶ 6		To facilitate SIHS's appeal of its ruling, the circuit court held SIHS in "friendly" contempt and imposed a $1 monetary sanction. Thereafter, SIHS filed an interlocutory appeal in the appellate court pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010).

¶ 7		In a judgment entered August 6, 2014, the appellate court affirmed the lower court's ruling, with two modifications: (1) all references to the "Greeley Report," an external peer review report contained in Dr. Dressen's December 1, 2011, application for staff privileges, were to be redacted and (2) any patient identifying information contained in the applications within

Group Exhibit F or in the Surgeon Case Histories contained in Group Exhibit J were to be redacted to the extent required by section 164.512(e) of the Code of Federal Regulations (45 C.F.R. § 164.512(e) (2012)). 2014 IL App (5th) 130356, ¶ 43. The appellate court then remanded the matter to the circuit court for further proceedings. *Id.*

¶ 8 SIHS filed a petition for leave to appeal in this court, which we allowed. Ill. S. Ct. R. 315 (eff. Jan. 1, 2015). We permitted the Illinois State Medical Society, the Illinois Hospital Association, the Illinois Academy of Physician Assistants, the Illinois Podiatric Medical Association, and the Illinois Association of Orthopaedic Surgeons to file a joint *amicus curiae* brief in support of SIHS. Also, we permitted the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiffs.

¶ 9                                       DISCUSSION

¶ 10 In its appeal before this court, SIHS has limited its challenge to the discovery order with regard to Group Exhibit F. SIHS now contends that Group Exhibit F, which consists of Dr. Dressen's three applications for staff privileges, is nondiscoverable in its entirety pursuant to section 15(h) of the Credentials Act, which provides that all "credentials data collected or obtained by the *** hospital shall be confidential." 410 ILCS 517/15(h) (West 2012). SIHS also contends that the appellate court's judgment in this case conflicts with the judgment in *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 556 (1998), wherein the court interpreted a confidentiality provision similar to the one here and held that confidential materials were privileged and could not be disclosed.

¶ 11 As an alternative argument, SIHS maintains that, if this court should find that Group Exhibit F is not privileged in its entirety, we should find that certain materials or information within Group Exhibit F must be redacted. Specifically, SIHS maintains: (1) any references in the applications to information reported to the National Practitioner Data Bank (NPDB) must be redacted because it is privileged under section 11137 of the Health Care Quality Improvement Act of 1986 (42 U.S.C. § 11137(a) (2012)) and (2) information concerning medical treatment provided by Dr. Dressen to patients who are not party to this lawsuit must be redacted because it is privileged under the Credentials Act and/or the physician-patient privilege.

¶ 12                                  Standard of Review

¶ 13 Initially, we must determine the appropriate standard of review. As we explained in *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001), although a trial court's order compelling discovery is ordinarily reviewed for a manifest abuse of discretion, the proper standard of review will depend on the question that was answered in the trial court. See also *D.C. v. S.A.*, 178 Ill. 2d 551, 559 (1997). If the facts are uncontroverted and the issue is the lower court's application of the law to the facts, a court of review may determine the correctness of the ruling independently of the lower court's judgments. *Norskog*, 197 Ill. 2d at 70-71; *Doe v. Township High School District 211*, 2015 IL App (1st) 140857, ¶ 74. Where, as here, the defendant challenges an order compelling discovery of information that the defendant believes to be subject to a statutory discovery privilege, the question is one of statutory construction, which is purely a question of law. *Norskog*, 197 Ill. 2d at 71; *Doe*, 2015 IL App (1st) 140857, ¶ 74. Accordingly, in the case at bar, we review *de novo* the lower court's determination that no

- 3 -

statutory discovery privilege exists that would prevent the disclosure of the three applications for staff privileges which Dr. Dressen submitted to SIHS or any specific documents or materials contained within.

¶ 14    When construing the statutory provisions relied on here, we are guided by familiar principles. Our primary objective must be to ascertain and give effect to the intent of the legislature. See *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). The most reliable indicator of legislative intent is the language of the statute, given its plain, ordinary, and popularly understood meaning. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). If the language is clear and unambiguous, the statute must be given effect as written, without resort to further aids of statutory construction. *Krautsack v. Anderson*, 223 Ill. 2d 541, 553 (2006). It must also be presumed that the legislature did not intend absurdity, inconvenience or injustice. *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 40 (2001).

¶ 15    It should be noted, as well, that privileges are designed to protect interests outside the truth-seeking process and, as a result, should be strictly construed as exceptions to the general duty to disclose. *Martinez v. Pfizer Laboratories Division*, 216 Ill. App. 3d 360 (1991). " '[O]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege. "[A] mere assertion that the matter is confidential and privileged will not suffice." ' " *Cox v. Yellow Cab Co.*, 61 Ill. 2d 416, 419-20 (1975) (quoting *Krupp v. Chicago Transit Authority*, 8 Ill. 2d 37, 42 (1956)).

¶ 16                    Whether Group Exhibit F Is Privileged in Its Entirety

¶ 17    As set forth above, Group Exhibit F contains three applications for staff privileges that Dr. Dressen submitted to SIHS. Dr. Dressen's initial application to SIHS was submitted on February 19, 2009. Thereafter, to maintain his staff privileges, he submitted applications for recredentialing on August 13, 2010, and December 1, 2011. SIHS contends that all three applications for staff privileges, which make up Group Exhibit F, are privileged in their entirety, pursuant to section 15(h) of the Credentials Act, which provides:

> "(h) Any credentials data collected or obtained by the health care entity, health care plan, or hospital shall be confidential, as provided by law, and otherwise may not be redisclosed without written consent of the health care professional, except that in any proceeding to challenge credentialing or recredentialing, or in any judicial review, the claim of confidentiality shall not be invoked to deny a health care professional, health care entity, health care plan, or hospital access to or use of credentials data. Nothing in this Section prevents a health care entity, health care plan, or hospital from disclosing any credentials data to its officers, directors, employees, agents, subcontractors, medical staff members, any committee of the health care entity, health care plan, or hospital involved in the credentialing process, or accreditation bodies or licensing agencies. However, any redisclosure of credentials data contrary to this Section is prohibited." 410 ILCS 517/15(h) (West 2012).

¶ 18    The appellate court held that the plain language of section 15(h) of the Credentials Act does not create a privilege against discovery for applications for staff privileges. 2014 IL App (5th) 130356, ¶ 20. Although the statute provides that credentials data collected or obtained by a hospital is "confidential, as provided by law," the appellate court held that confidentiality,

discoverability, and admissibility are distinct concepts. The court then drew a distinction between information which is "confidential" and information which is "privileged" and, therefore, nondiscoverable and inadmissible. 2014 IL App (5th) 130356, ¶ 18. Further, recognizing that privileges are strongly disfavored, the appellate court held "there is no general principle under Illinois law that provides that information that is otherwise discoverable is privileged because it is confidential." *Id.* ¶ 17 (citing *People ex rel. Birkett v. City of Chicago*, 292 Ill. App. 3d 745, 753 (1997)). Comparing the language in section 15(h) of the Credentials Act with the language in sections 8-2101 and 8-2102 of the Medical Studies Act, the court further held that "where the legislature has intended to create a privilege, it has done so explicitly." *Id.* ¶ 18.

¶ 19 The appellate court also declined to follow the rationale in *TTX Co.*, 295 Ill. App. 3d at 555, and concluded that, to create a privilege, the plain language of the statute must explicitly state that the information that is confidential is also privileged, nondiscoverable, or inadmissible. *Id.* ¶¶ 19-20. We agree.

¶ 20 The Credentials Act was enacted in 1999. Pub. Act 91-602 (eff. Aug. 16, 1999). The Act provided for the formation of a Health Care Credentials Council, which would collaborate with the Department of Public Health to create "uniform health care and hospital credentials forms."[1] 410 ILCS 517/10, 15 (West 2012). These forms, when completed by the health care professional, would contain all of the credentials data commonly requested by a health care agency or hospital for purposes of credentialing or recredentialing a health care professional. 410 ILCS 517/15(a)(3), (4) (West 2012). Section 5 of the Credentials Act defines "[c]redentials data" as "those data, information, or answers to questions required by a health care entity, health care plan, or hospital to complete the credentialing or recredentialing of a health care professional" and "[c]redentialing" as "the process of assessing and validating the qualifications of a health care professional." 410 ILCS 517/5 (West 2012).

¶ 21 In *Davis v. Kewanee Hospital*, 2014 IL App (2d) 130304, ¶ 48, the court explained that the purpose of the Credentials Act is to standardize and regulate the collection of credentials data to ensure that health care entities correctly assess and validate health care professionals' qualifications. The *Davis* court noted that the Credentials Act streamlines the process of credentialing and recredentialing by requiring health care entities to use a "uniform" form and that, since January 1, 2002, the uniform data credentials form is the only information a health care professional need submit to a hospital when applying for staff privileges. *Id.* ¶ 46. See also 410 ILCS 517/15(a), (e) (West 2012).

¶ 22 According to SIHS, whenever a physician seeks staff privileges at its hospitals, the physician submits an application, utilizing the mandated Illinois uniform data credentials form, to the System Credentialing Committee, which is a standing committee of the hospital. Once the System Credentialing Committee receives the application, it gathers information from various sources to verify the information contained in the application. The application and verifying materials are then forwarded, along with a recommendation by the System Credentialing Committee, to the Medical Executive Committee, which reviews the recommendation and materials. The Medical Executive Committee, in turn, sends its

---

[1]The Council's sole purpose was to assist in the formation of the uniform forms. Accordingly, the Act also provided that the Council would automatically be abolished on July 1, 2003.

recommendation to the Board of Trustees, which has the final say on whether the application for staff privileges will be granted.

¶ 23    SIHS argues that the appellate court erred in the present case when it found that section 15(h) of the Credentials Act does not explicitly create a privilege against discovery of a physician's application for staff privileges. SIHS argues that because section 15(h) of the Credentials Act provides that all credentials data collected or obtained by a hospital are confidential and may not be disclosed, the legislature explicitly indicated that applications for staff privileges are privileged and nondiscoverable. In support of their position, SIHS relies on the decision in *TTX* for the proposition that the legislature's use of the term "confidential" implies nondiscoverability and nonadmissibility.

¶ 24    We disagree with SIHS's premise that information which is confidential is implicitly privileged. The Webster's Third New International Dictionary defines "confidential" as "known only to a limited few : not publicly disseminated." Webster's Third New International Dictionary 476 (1986). Thus, confidential information is information that may not be disclosed generally. However, a confidentiality provision in a statute or rule does not necessarily mean that an impenetrable barrier to disclosure has been erected. See *People ex rel. Illinois Judicial Inquiry Board v. Hartel*, 72 Ill. 2d 225, 236 (1978). When information is identified as confidential, disclosure will depend on whether applying an evidentiary privilege " 'promotes sufficiently important interests to outweigh the need for probative evidence.' " *University of Pennsylvania v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 189 (1990) (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). Information, though confidential, may be highly relevant to matters at issue in a trial and, therefore, critical to the truth-seeking process. Consequently, the confidential nature of information does not prevent it from being discoverable unless the plain language of the statute so provides.

¶ 25    SIHS's reliance on *TTX* is misplaced. *TTX* involved a tax dispute. After conducting an audit of TTX, the Department of Revenue notified TTX that it should have used the "three-factor formula" in determining its tax liability. The Department then issued a Notice of Deficiency to TTX and assessed a penalty. TTX filed a complaint, alleging that it had properly applied the single factor transportation formula. It obtained a discovery order requiring the Department to identify every taxpayer who had apportioned income to Illinois using the single factor transportation formula during the audit period. The Department refused to comply with the order and was held in contempt. The Department then appealed, arguing that the evidence was confidential pursuant to section 917(a) of the Illinois Income Tax Act and was not relevant to the issue before the court.

¶ 26    On appeal, the *TTX* court held, "In the absence of a statutory exception to the confidentiality rule, permitting disclosure of tax return information pursuant to the discovery order would violate the explicit prohibition of such disclosures as stated in [the statute]." *TTX*, 295 Ill. App. 3d at 556. However, the *TTX* court did not rely solely on the confidentiality provision in the tax statute to deny discovery. The court also held that the evidence sought in the discovery order was "irrelevant to the issues presented." *Id.* at 557. The *TTX* court held, "Whether other companies unrelated to TTX calculated their income taxes as transportation companies, and whether they were audited for doing so, is irrelevant to the issue of whether TTX should be designated a transportation company for income tax purposes. The relevant

question is not whether TTX was treated differently from other companies or whether the Department is interpreting correctly section 304 with regard to other companies." *Id.*

¶ 27    We agree with the lower courts that *TTX* is inapposite to our case. Here, plaintiffs filed a complaint against SIHS for negligent credentialing. Clearly, information contained in Group Exhibit F, the only materials which, by statute, SIHS was required to consider in determining whether to credential and recredential Dr. Dressen, would be highly relevant to the cause of action. In fact, we fail to see how a cause of action for negligent credentialing could proceed if we were to deny plaintiffs access to this information.

¶ 28    Certainly, it is true that when the plain language of a statute creates a privilege, the information may not be disclosed, regardless of its relevance. In these situations, however, the statutory privilege is an indication that the legislature has determined that other "interests outside the truth-seeking process" must be protected. *Martinez*, 216 Ill. App. 3d at 367. Here, however, we do not believe that SIHS has demonstrated how interpreting the confidentiality provision in section 15(h) as creating a blanket privilege against the discovery of the data contained in Group Exhibit F would advance other interests outside the truth-seeking process.

¶ 29    In its reply brief, SIHS contends that the appellate court erred in its interpretation of section 15(h) because it failed to consider both the Credentials Act and the Medical Studies Act "as a whole and *in pari materia.*" Again, we must disagree.

¶ 30    In *Frigo v. Silver Cross Hospital & Medical Center*, 377 Ill. App. 3d 43 (2007), Silver Cross argued that the trial court should have barred plaintiff from introducing evidence in its negligent credentialing case about what Silver Cross's credentials committee reviewed because that information was privileged under sections 8-2101 and 8-2102 of the Medical Studies Act. 735 ILCS 5/8-2101, 8-2102 (West 2000). Sections 8-2101 and 8-2102 of the Medical Studies Act provide, in pertinent part, that all information used in the course of internal quality control is "privileged," "strictly confidential" and "shall not be admissible as evidence, nor discoverable in any action of any kind in any court or before any tribunal, board, agency or person." 735 ILCS 5/8-2101, 8-2102 (West 2012). The *Frigo* court acknowledged that "[t]he purpose of the [Medical Studies Act] is to ensure that members of the medical profession can maintain effective professional self-evaluation and to improve the quality of healthcare." (Internal quotation marks omitted.) *Frigo*, 377 Ill. App. 3d at 65. Nonetheless, the court held that "not every piece of information a hospital staff acquires is nondiscoverable, even if it is acquired by a peer-review committee." (Internal quotation marks omitted.) *Id.* The court concluded that the information sought by plaintiff in his negligent credentialing case against Silver Cross was not privileged because "[t]he Act was 'never intended to shield hospitals from potential liability.' *Webb* [*v. Mount Sinai Hospital & Medical Center of Chicago, Inc.*], 347 Ill. App. 3d [817,] 825 [(2004)], quoting *Roach* [*v. Springfield Clinic*], 157 Ill. 2d [29,] 42 [(1993)]. We believe that if this court made such an expansive reading of the Act, it would eliminate actions against hospitals for institutional negligence." (Internal quotation marks omitted.) *Id.* at 66. Accordingly, reading the Credentials Act and the Medical Studies Act *in pari materia* does not lead us to a different result. Thus, for all of the reasons set forth above, we find that Group Exhibit F is not privileged in its entirety pursuant to section 15(h) of the Credentials Act. Having reached this conclusion, we must now consider whether any materials within Group Exhibit F are privileged and must be redacted.

¶ 31                   Information Reported to the National Practitioner Data Bank

¶ 32        In his applications for staff privileges, Dr. Dressen provided SIHS with information concerning reports which were made to the NPDB, as required by law. See 45 C.F.R. § 60.1 *et seq.* (2013). SIHS argues that this information is privileged pursuant to section 11137(b)(1) of the Health Care Quality Improvement Act, which provides that "[i]nformation reported under this subchapter is considered confidential." 42 U.S.C. § 11137(b)(1) (2012). SIHS cites no cases in which section 11137 has been applied to prevent the discovery of information reported to the NPDB and, again, relies only on the "confidential" designation within the provision.

¶ 33        The appellate court held that, although section 11137 provides that information reported under the act is considered confidential, the provision also states that "[n]othing in this subsection shall prevent the disclosure of such information by a party which is otherwise authorized, under applicable State law, to make such disclosure." 42 U.S.C. § 11137(b)(1) (2012). The appellate court held that, under Illinois discovery rules, the defendant would be "authorized, and *** in fact, required," to produce this information with respect to the plaintiffs' negligent credentialing claim. 2014 IL App (5th) 130356, ¶ 27.

¶ 34        We agree with the appellate court that references in Dr. Dressen's applications to material reported to the NPDB are not privileged. The Health Care Quality Improvement Act provides in section 11137(a):

> "The Secretary (or the agency designated under section 11134(b) of this title) shall, upon request, provide information reported under this subchapter with respect to a physician or other licensed health care practitioner to State licensing boards, to hospitals, and to other health care entities (including health maintenance organizations) that have entered (or may be entering) into an employment or affiliation relationship with the physician or practitioner or to which the physician or practitioner has applied for clinical privileges or appointment to the medical staff." 42 U.S.C. § 11137(a) (2012).

¶ 35        Pursuant to the Code of Federal Regulations, hospitals are not only permitted to request information concerning a health care practitioner from the NPDB, they are *required* to do so whenever the "health care practitioner applies for a position on its medical staff (courtesy or otherwise) or for clinical privileges at the hospital"; and must reinquire "[e]very 2 years for any health care practitioner who is on its medical staff (courtesy or otherwise) or has clinical privileges at the hospital." 45 C.F.R. § 60.17(a)(1), (2) (2013). In addition, section 60.18(a)(1)(v) of the Code provides that the NPDB may provide information, upon request, to "[a]n attorney, or individual representing himself or herself, who has filed a medical malpractice action or claim in a state or Federal court or other adjudicative body against a hospital, and who requests information regarding a specific health care practitioner who is also named in the action or claim." *Id.* § 60.18(a)(1)(v). The NPDB will release the information it possesses regarding a particular health care provider directly to the attorney or individual representing himself or herself, "upon the submission of evidence that the hospital failed to request information from the NPDB, as required by § 60.17(a) of this part." The information may then be used "solely with respect to litigation resulting from the action or claim against the hospital." *Id.*

¶ 36    Reading the confidentiality provision in paragraph (b) of section 11137 of the Health Care Quality Improvement Act in conjunction with the Code of Federal Regulations, we believe it is clear that information reported to the NPDB, though confidential, is not privileged from discovery in instances where, as here, a lawsuit has been filed against the hospital and the hospital's knowledge of information regarding the physician's competence is at issue.

¶ 37                    Information Regarding Treatment of Nonparties

¶ 38    SIHS's final claim is that information in Dr. Dressen's applications concerning his treatment and care of other patients who are not party to this cause of action must be redacted because it is privileged pursuant to section 15(h) of the Health Care Credential Data Collection Act and Illinois's physician-patient privilege, as codified in 735 ILCS 5/8-802 (West 2012). We have already held that the confidentiality provision in section 15(h) does not create a privilege and need not consider this claim further. Consequently, we are left with SIHS's claim that information regarding medical treatment provided to nonparties is privileged pursuant to Illinois's physician-patient privilege.

¶ 39    In the appellate court, SIHS argued that nonparty medical information should be redacted because it was privileged pursuant to the Health Insurance Portability and Accountability Act (HIPAA) (42 U.S.C. § 1320d *et seq.* (2012)). The appellate court refused defendant's request to redact nonparty medical information, noting that, for the most part, the information in the applications contained no "individually identifiable health information" and, therefore, was not protected by HIPAA. (Internal quotation marks omitted.) 2014 IL App (5th) 130356, ¶ 29. In addition, the appellate court noted that there are certain provisions in HIPAA (see, *e.g.*, 45 C.F.R. § 164.512 (2012)) that permit the disclosure of protected health information for judicial and administrative hearings if there is a court order or a qualified protective order. Therefore, the court denied SIHS's request but directed plaintiffs to follow the provisions of HIPAA regarding disclosure of information containing identifying information.

¶ 40    SIHS now contends that the Illinois physician-patient privilege is broader than HIPAA and should be applied to require the redaction of all references to medical care and treatment rendered to nonparties. SIHS admits that this argument is being raised for the first time before this court.

¶ 41    Because SIHS never relied on the physician-patient privilege in the courts below, their argument may be deemed forfeited. Of course, forfeiture is a limitation on the parties and not on this court and, as we noted in *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 438 (2008), we may overlook any forfeiture in the interest of maintaining a sound and uniform body of precedent. See also *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004).

¶ 42    Regardless of whether SIHS's claim is forfeited, we find that it is without merit. While it is true that, under Illinois law, medical records of nonparties are protected by the physician-patient privilege with regard to both the facts and communications contained therein (*In re D.H.*, 319 Ill. App. 3d 771, 776 (2001)), plaintiffs here are not seeking the medical records of nonparties. The applications only contain information regarding the medical treatment provided and procedures performed by Dr. Dressen at SIHS hospitals. Individual patient identifiers have either not been included or have already been redacted pursuant to the appellate court's judgment, as explained above. The cases cited by SIHS are inapposite.

Consequently, we are offered no basis (and our research can find none) for holding that a physician-patient privilege applies to raw data regarding treatment and procedures performed by Dr. Dressen.

¶ 43                                    CONCLUSION

¶ 44        For the reasons stated above, we affirm the appellate court's judgment. SIHS must comply with the circuit court's discovery order to produce Group Exhibit F, as modified by the appellate court. We also affirm the appellate court's order vacating the order of contempt and the monetary penalty imposed. We remand the matter to the circuit court for further proceedings.

¶ 45        Appellate court judgment affirmed.

¶ 46        Cause remanded.