# Illinois Official Reports

## Appellate Court

---

### *Ahmad v. Board of Election Commissioners*, 2016 IL App (1st) 162811

---

| | |
|---|---|
| Appellate Court Caption | MARYAM AHMAD, Plaintiff-Appellee and Counterdefendant-Appellee, v. THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO, and Its Members, MARISEL A. HERNANDEZ, Chairman; WILLIAM J. KRESSE; and JONATHAN T. SWAIN; and DAVID D. ORR, in His Official Capacity as Cook County Clerk, Defendants and Counterdefendants-Appellees (Rhonda Crawford, Proposed Intervenor-Defendant-Appellant and Counterplaintiff-Appellant; Arlemmie M. Thirus, Counterplaintiff-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-2811 |
| Filed | December 9, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-COEL-19; the Hon. Alfred Paul, Judge, presiding. |
| Judgment | Affirmed in part and dismissed in part. |
| Counsel on Appeal | Andrew Finko, P.C., of Chicago (Andrew Finko, of counsel), for appellants.<br><br>Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson and Mary Ryan Norwell, of counsel), for appellee. |

Panel                           JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Rochford concurred in the judgment and opinion.

## OPINION

¶ 1      On March 15, 2016, Maryam Ahmad ran as a candidate in the Democratic general primary election for judge of the circuit court of Cook County, first subcircuit, to fill the vacancy of Judge Cynthia Brim. Ahmad was defeated in that election by Jesse Outlaw. The same day, a race to nominate candidates for judge of the circuit court of Cook County, first subcircuit, to fill the vacancy of Judge Vanessa Hopkins was also on the ballot. Rhonda Crawford was nominated as the Democratic candidate for the Hopkins vacancy. On September 6, 2016, Ahmad filed declarations of intent to be a write-in candidate for the Hopkins vacancy in the November 8, 2016, general election with the two relevant election agencies: the defendant Board of Election Commissioners of the City of Chicago (Chicago Board) and defendant David D. Orr, the Cook County Clerk. See 10 ILCS 5/17-16.1, 18-9.1 (West 2014). In Illinois, write-in votes are only counted for candidates who have filed write-in candidacy declarations. See *id.*

¶ 2      Clerk Orr accepted Ahmad's write-in declaration, but the Chicago Board rejected it. The Chicago Board asserted that Ahmad was disqualified from running as a write-in candidate for the Hopkins vacancy under the so-called "sore loser" law, section 18-9.1 of the Election Code (10 ILCS 5/18-9.1 (West 2014)). That law provides in pertinent part: "A candidate for whom a nomination paper has been filed as a partisan candidate at a primary election, and who is defeated for his or her nomination at the primary election, is ineligible to file a declaration of intent to be a write-in candidate for election in that general or consolidated election." *Id.*

¶ 3      On September 13, 2016, Ahmad filed a petition against the Chicago Board and Clerk Orr. While it contained various counts and claims, it essentially sought the single remedy of requiring the Chicago Board to accept Ahmad's write-in declaration and count write-in votes validly cast for her. She claimed that under a proper construction of section 18-9.1 of the Election Code, she was not disqualified from running for the Hopkins vacancy, only the Brim vacancy. On September 20, the Chicago Board filed a comprehensive memorandum in opposition to Ahmad's petition, defending its own interpretation of section 18-9.1 and vigorously defending against Ahmad's claims. Rhonda Crawford appeared through counsel and moved to intervene as a party defendant. In her motion, she agreed with the Chicago Board's construction of section 18-9.1 and also wanted to bar the counting of any write-in votes for Ahmad. After hearing arguments on September 21, the court entered an order denying Crawford's request to intervene, stating that her request was untimely and that her interests were adequately represented by the Chicago Board. The court conducted a hearing on Ahmad's petition, which essentially was a trial on the merits of her claims based on undisputed facts and documentation.

¶ 4      At the conclusion of the hearing, the court issued a memorandum opinion adopting Ahmad's interpretation of section 18-9.1, reasoning that it "is not applicable to the Hopkins vacancy in this matter because the Plaintiff filed nomination papers for a separate vacancy at

the primary election, the Brim vacancy." In a separate order, the court (1) issued a writ of *mandamus* requiring the Chicago Board to accept Ahmad's write-in declaration and to count votes validly cast for her, (2) declared that section 18-9.1 of the Election Code "allows a person to be a valid write-in candidate for an office, different from the office unsuccessfully sought in the primary election," and (3) found that determining whether a declaration of intent to be a write-in candidate comports with the Election Code is a "ministerial task."

¶ 5 On October 14, Crawford, although she was not a party to the case because she had been denied leave to intervene, sought leave to file a counterclaim. The court allowed her to file the counterclaim by the same day, which she did. Crawford's counterclaim requested a writ of *mandamus* and declaratory and injunctive relief to prevent the Chicago Board and Clerk Orr from listing Ahmad as a valid write-in candidate and from counting any write-in votes cast for her. The counterclaim also requested that the court enjoin Ahmad from "representing, claiming or promoting herself" as a candidate in the subject election. The court set an expedited schedule for filing of memoranda regarding the counterclaim and set the matter for status on October 21. Since Crawford was not then a party to the case, granting her leave to file her counterclaim in essence granted her leave to intervene, notwithstanding the September 21 order to the contrary. On October 17, Crawford filed a motion to reconsider the September 21 order. The court conducted an additional hearing on Crawford's new filings on October 24. Following that hearing, the circuit court denied Crawford's motion to reconsider and "denied" her counterclaim.

¶ 6 Crawford has appealed from the orders of September 21 and October 24. The Chicago Board did not appeal on its own and has declined to participate in Crawford's appeal. Clerk Orr did not actively participate in the proceedings below and also has taken no position in this appeal. We granted Crawford's motion for expedited consideration and allowed the parties to file memoranda in lieu of formal briefs. On November 7, 2016, we issued a brief order affirming the circuit court and indicating that an opinion would follow in due course. Pursuant to that order, Ahmad was listed as a valid write-in candidate for the November 8 General Election, and votes for her were duly counted.

¶ 7 We take judicial notice that on December 5, 2016, the Illinois State Board of Elections duly canvassed and proclaimed the results of the election. See Ill. R. Evid. 201(b) (eff. Jan. 1, 2011); *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 22 n.1 (a court may take judicial notice of election results). The State Board declared Crawford to be the winner of the election, as she received 87,970 votes to Ahmad's 884 votes. That result suggests that the case is now moot, but it does not end our inquiry.

¶ 8 Our supreme court has explained, "The public interest exception to the mootness doctrine allows a court to reach the merits of a case which would otherwise be moot if the question presented is of a public nature, an authoritative resolution of the question is desirable for the purpose of guiding public officers, and the question is likely to recur." *Jackson*, 2012 IL 111928, ¶ 44. These criteria are satisfied here as to the main issue regarding the interpretation of section 18-9.1 of the Election Code. The propriety of an election inherently presents a question of a "public nature." And given the large number of judicial vacancies that occur in Cook County, we believe that the question is likely to recur, so that a definitive resolution would be helpful to guide election authorities and candidates in the future. See, *e.g.*, *id.* ¶ 45; *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 208 (2008) (public interest exception to mootness doctrine allows court to resolve candidacy eligibility

disputes after the election). Accordingly, we will review the October 24 order notwithstanding the results of the election.

¶ 9 The same is not true, however, regarding Crawford's appeal of the trial court's September 21 order denying her first request to intervene. "A moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party; an abstract question is one in existence but for which no effectual relief can be granted." *Johnson v. Quern*, 90 Ill. App. 3d 151, 155 (1980). As noted above, the trial court eventually allowed Crawford to file her counterclaim and resolved it on the merits. Crawford prevailed in the election despite Ahmad's write-in campaign. Accordingly, the issue of Crawford's intervention is now moot. Under these circumstances, we do not find that the public interest exception allows us to review the propriety of the September 21 order. We therefore dismiss the appeal as to that order.

¶ 10 Two Election Code sections are at issue in this case. Article 17 of the Election Code is the general statute governing the administration of elections by the various county clerks in Illinois, including the Cook County Clerk. That article contains section 17-16.1 of the Election Code (10 ILCS 5/17-16.1 (West 2014)), the "sore loser" law governing write-in candidacy declarations filed with those county clerks. Chicago, however, has a board of election commissioners established under article 6 of the Election Code. *Bilek v. City of Chicago*, 396 Ill. 445, 454 (1947). The general statute governing election administration in Chicago is article 18 of the Election Code. See 10 ILCS 5/18-1 (West 2014). Section 18-9.1 of the Election Code governs write-in candidacy declarations filed with the Board of Election Commissioners of the City of Chicago. 10 ILCS 5/18-9.1 (West 2014). Sections 17-16.1 and 18-9.1 are identical. Because the primary issue in this case involves the Chicago Board's enforcement of section 18-9.1, we will refer to that section only, unless the context requires otherwise.

¶ 11 We review the circuit court's determination of the interpretation of a statute *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). When construing a statute, our primary objective is to ascertain and give effect to the intent of the legislature. *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 14. "The most reliable indicator of legislative intent is the language of the statute, given its plain, ordinary, and popularly understood meaning." *Id.* The plain language of section 18-9.1 does not immediately resolve the question presented because it is ambiguous. Viewed from the strictest possible perspective, it prohibits a primary election loser from running for *any* office whatsoever at the next succeeding general election, not merely for the same office. Under a more moderate interpretation, a candidate would be barred from running for the same office as the one she lost in the primary (*i.e.*, judge) but is not barred from running as a write-in for a different office such as state senator. An even more generous interpretation would only bar the losing candidate from running for the exact same position as the one she lost in the primary (*i.e.*, the Brim vacancy). Under this interpretation, the term "and who is defeated *for his or her nomination* at the primary election" refers only to nomination for the particular position that the candidate lost in the primary. (Emphasis added.) 10 ILCS 5/18.1 (West 2014). All three interpretations are objectively reasonable because the statute is open-ended and imprecise.

¶ 12 To determine which of these interpretations is correct, we must examine both the structure of judicial elections in Illinois and the case law governing ballot access in Illinois. We begin by noting that while the Brim and Hopkins vacancies involve the same constitutional office, judge of the circuit court of Cook County, they are distinct positions in that a single person cannot

- 4 -

run for or hold both simultaneously. See generally 10 ILCS 5/7-12(9) (West 2014); 705 ILCS 35/2f(a) (West 2014) (providing that 165 resident circuit judges are to be elected from the 15 subcircuits of the Cook County Judicial Circuit).

¶ 13    "The citizens' right to vote for the candidates of their choice is of paramount importance, because it preserves all other civil and political rights." *Paul v. State of Indiana Election Board*, 743 F. Supp. 616, 625-26 (S.D. Ind. 1990) (citing *Reynolds v. Sims*, 377 U.S. 533, 562 (1964), and *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)). It is a right afforded significant constitutional protections. *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Legislation that affects *any* stage of the election process implicates the right to vote. Thus, our supreme court has held "that the right to vote is implicated by legislation that restricts a candidate's effort to gain access to the ballot." *Tully v. Edgar*, 171 Ill. 2d 297, 307 (1996).

¶ 14    Invoking these principles, our supreme court has clearly indicated that ballot access laws are to be interpreted liberally and that bars against candidacy are to be strictly construed. "We are mindful of the need to tread cautiously when construing statutory language which restricts the people's right to endorse and nominate the candidate of their choice." *Lucas v. Lakin*, 175 Ill. 2d 166, 176 (1997). Applying this rule to interpret an ambiguous ballot access statute, the *Lucas* court noted that the candidate in question was entitled to ballot placement "in the absence of a clear legislative statement to the contrary." *Id.* This court has further noted that "[i]t is basic that Illinois courts view the right of a citizen to hold political office as a valuable one. The exercise of this right is not to be prohibited or curtailed except by plain provisions of the law. Indeed, our supreme court has held that statutes imposing disqualification should be construed liberally, resolving all doubts in favor of a candidate's eligibility." *McGuire v. Nogaj*, 146 Ill. App. 3d 280, 282 (1986) (citing *Livingston v. Ogilvie*, 43 Ill. 2d 9 (1969), and *Velazquez v. Soliz*, 141 Ill. App. 3d 1024 (1986)).

¶ 15    The purposes of sore-loser statutes are well established. Essentially, they prevent a candidate from taking "two bites at the same apple" by losing a primary and then resurfacing as a candidate in the general election against the opponent who defeated her in the primary. Courts have noted that they prevent "divisive *** candidacies" (*Burdick v. Takushi*, 504 U.S. 428, 439 (1992)), discourage "intra-party feuding," and reserve " 'major struggles' " for general election ballots (*South Carolina Green Party v. South Carolina State Election Comm'n*, 612 F.3d 752, 756 (4th Cir. 2010)).

¶ 16    Ahmad did not lose to Rhonda Crawford in the primary for the Hopkins vacancy, so allowing her to run as a write-in candidate against Crawford does not give Ahmad a "second bite" at the same "Hopkins vacancy" apple. The Democratic primary voters did not reject her candidacy for the Hopkins vacancy, nor have any voters had the opportunity to consider her as a candidate for that vacancy. The fact that she lost the Democratic primary and now seeks a non-Democratic line on the ballot is of little relevance because write-in candidates do not run as candidates of any particular political party. See generally 10 ILCS 5/18-9.1 (West 2014); see also Keri-Lyn J. Krafthefer & Adam W. Lasker, Local Governmental Elections, in *Election Law*, Ill. Inst. for Cont. Legal Educ. § 12.7 (2016).

¶ 17    Our interpretation is further supported by another provision of the Election Code, which illustrates that the legislature knows how to craft precise prohibitions about multiple candidacies in judicial subcircuits when it desires to do so. The Election Code limits candidates to filing petitions for only one vacancy in a subcircuit and one vacancy in a circuit "in any one filing period." 10 ILCS 5/7-12(9) (West 2014) (as amended by Pub. Act 97-81 (eff. July 5,

2011)). A candidate who files for both must withdraw one set of petitions before a deadline, lest she be removed from the ballot for both. *Id.* This provision demonstrates that (1) multiple vacancies in a judicial subcircuit are different positions and (2) the legislature did not intend for the sore-loser rule to disqualify candidates for those different positions. See *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 188 (1992) ("The legislature is perfectly capable of being specific when it wants to be.").

¶ 18 In the absence of specific language in section 18-9.1 prohibiting a candidate from running as a write-in candidate for a *different* subcircuit position than the one she lost in the primary election, we find that the law must be interpreted to permit Ahmad's candidacy for the Hopkins vacancy.

¶ 19 Finally, we note Ahmad's request that we issue an order disqualifying Crawford from running in the election and "suppressing" any votes cast for her. Ahmad based this request on an order our supreme court entered while this case was pending in this court. The supreme court suspended Crawford from the practice of law effective immediately and until further order of court, and it also ordered that if she won the election, she was specifically "enjoined and restrained from taking the judicial oath of office or assuming the office of judge until further order of the Court." *In re Crawford*, M.R. 28341 (Oct. 31, 2016). We decline Ahmad's request. First, and most importantly, we must defer to our supreme court on a matter that is pending before it. Second, we are a court of review. Our jurisdiction is limited to reviewing the orders entered by the circuit court, and this issue never arose until this appeal had been perfected.

¶ 20 For these reasons, we affirm the October 24 order denying Crawford relief on her counterclaim and dismiss the appeal as to the September 21 order.

¶ 21 Affirmed in part and dismissed in part.