NOTICE
Decision filed 05/16/16. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2016 IL App (5th) 140056

NO. 5-14-0056

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| VALENTINE ZAGORSKI and CHRISTINA ZAGORSKI, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 10-L-148 |
| ALLSTATE INSURANCE COMPANY, | ) ) ) | Honorable |
| Defendant-Appellant | ) ) | Lloyd A. Cueto and Andrew J. Gleeson, |
| (Robert L. Brady, Contemnor-Appellant). | ) | Judges, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiffs, Valentine Zagorski and Christina Zagorski, filed an action in the circuit court of St. Clair County, against the defendant, Allstate Insurance Company (Allstate), alleging a vexatious breach of contract and common law fraud in the handling of their homeowners' insurance claim.  At the request of Allstate, and its attorney, Robert Brady, the circuit court held Brady in civil contempt for refusing to comply with a discovery order.  The court also imposed a fine of $25 per day, which was stayed pending appeal.  Allstate and Brady appeal the contempt order and the underlying discovery

1

order. They contend that the circuit court erred in requiring them to answer interrogatories which seek information that is irrelevant to the plaintiffs' action or protected by a statutory privilege. For reasons that follow, we vacate the contempt order and monetary sanction, we affirm in part and reverse in part the underlying discovery order, and we remand this case with directions.

¶ 2 BACKGROUND AND PROCEDURAL HISTORY

¶ 3 On August 21, 2009, the plaintiffs purchased a homeowners' insurance policy from Allstate to cover their home in Fairview Heights, Illinois. Five days later, the plaintiffs' home was damaged by a fire. The plaintiffs filed a claim with Allstate, and their claim was assigned to Allstate's Special Investigation Unit.

¶ 4 On September 6, 2009, Theresa Robinson, an adjuster with the Special Investigation Unit, contacted the plaintiffs and obtained a recorded statement from each of them. On that same date, Robinson sent a letter to the plaintiffs to inform them of their responsibilities during the claims process. Enclosed with the letter was a form entitled, "Sworn Statement in Proof of Loss." Robinson instructed the plaintiffs to complete the form and return it to Allstate, signed and notarized, within 60 days. Shortly thereafter, Allstate requested sworn statements from both plaintiffs. On September 12, 2009, Allstate's attorney, Robert Brady, separately questioned each plaintiff, under oath, for more than an hour. Then, in a letter dated January 5, 2010, Robinson notified the plaintiffs that the investigation had concluded, and that Allstate had denied the claim based upon its determination that the plaintiffs had intentionally set the fire.

2

¶ 5    On March 29, 2010, the plaintiffs filed a complaint against Allstate in the circuit court of St. Clair County.  The third amended complaint is at issue.  In count I of the third amended complaint, the plaintiffs allege that Allstate breached its duties under the homeowners' insurance contract in that it vexatiously and unreasonably denied the plaintiffs' claim for insurance benefits following their fire loss.  They seek contractual damages, as well as statutory penalties and attorney fees under section 155 of the Illinois Insurance Code (Code) (215 ILCS 5/155 (West 2010)).  In count II, the plaintiffs assert a claim for common law fraud, alleging that Allstate's agent, Theresa Robinson, knowingly made false statements during the claims-handling process for the purpose of inducing the plaintiffs to act in reliance on her statements, that the plaintiffs acted in reliance on her statements, and that the plaintiffs were thereby damaged.

¶ 6    On August 27, 2010, the plaintiffs served their initial interrogatories and requests for production on Allstate.  The plaintiffs inquired about Allstate's claims practices, including the following interrogatories which are at issue in this appeal:

> "12.    During the last five years has any Illinois court assessed attorney's fees, costs, penalties, or fines against Allstate pursuant to 215 ILCS 5/155?  If so, state the following:
>
> a.    the case name, number and jurisdiction;
> b.    the amount of the fees, costs, penalties or fines; and
> c.    whether the fees, costs, penalties or fines were a result of denial of a fire loss claim.
>
> 13.    During the last five years has Defendant been sued in Illinois by any insured alleging Defendant failed to pay a fire loss claim?  If so, state:
>
> a.    the case name, number, and jurisdiction;
> b.    the date the case was filed;
> c.    the attorneys of record;

3

   d.  whether the case was tried or settled; and

   e.  the amount of any settlement or jury verdict.

  14. Did Defendant have a policy manual or other documents for handling fire loss claims in effect at the time of the fire? If so, identify the document.

  15. During the last five years have any of Defendant's insureds made any claim with the Illinois Department of Insurance alleging improper claims practices regarding a fire loss claim? If so, please state:

   a.  the name and address of each claimant;
   b.  the date each claim was filed; and
   c.  the disposition of each claim."

¶ 7 On October 6, 2010, Allstate responded with objections to certain questions in the initial set of interrogatories. The stated grounds for objection to interrogatories 12, 13, 14, and 15 are identical, and are as follows:

> "Objection. Defendant objects on the grounds that this interrogatory is over-broad, unduly burdensome, harassing, seeks information which is irrelevant and not calculated to lead to the discovery of admissible evidence, and seeks information protected by the work-product and attorney-client privileges."

¶ 8 On October 14, 2010, the plaintiffs filed a motion to compel Allstate to answer their interrogatories. A few weeks later, Allstate filed a motion to dismiss the plaintiffs' complaint. Both motions were scheduled for hearing on November 23, 2010, but neither was heard that day. The judge who had been presiding over the case, Michael O'Malley, retired in December 2010, and the case was assigned to Judge Lloyd Cueto in January 2011. In March 2011, the plaintiffs were granted leave to file an amended complaint, rendering Allstate's motion to dismiss moot. In April 2011, Allstate served the plaintiffs with a duplicate set of objections to the initial set of interrogatories. Based on the record and docket entries, there was little activity involving the court during the next 12 months.

4

¶ 9    On May 17, 2012, the plaintiffs filed a motion to compel the deposition of Allstate's attorney, Robert Brady. The plaintiffs argued that the deposition was proper and necessary because Brady had actively participated in Allstate's investigation of their fire claim, and may have information relevant to whether Allstate had engaged in improper claims practices. The plaintiffs also filed a motion for an *in camera* inspection of Allstate's claims log. Allstate had previously refused to produce that portion of its claims log containing entries and notes made after the date the plaintiffs' suit was filed, claiming privilege. Allstate did not, however, prepare a privilege log in support of its claim of privilege.

¶ 10    The plaintiffs' motions were called for hearing on June 28, 2012. After considering the arguments of the parties, the court denied the plaintiffs' motion to compel Brady's deposition, but granted the plaintiffs leave to present interrogatories directed at Brady. The court indicated that plaintiffs could discover nonprivileged information regarding Brady's involvement with the claims investigation, such as the date he was first retained and his hourly rate of pay. After conducting an *in camera* inspection of Allstate's claims log, the court sustained Allstate's objections to all entries made after the date that the plaintiffs filed their lawsuit. The court did, however, direct Allstate to identify an expert whose name appeared in the claims log, but who had not been previously disclosed to the plaintiffs.

¶ 11    Shortly after the hearing, the plaintiffs served the following supplemental interrogatories on Allstate:

5

"1.   State the following regarding Robert Brady's involvement in the subject fire claim:

    a.   the date he was first consulted;
    b.   the person who first consulted him;
    c.   the number of times and dates he talked with Theresa Robinson;
    d.   the number of letters or emails sent to and received from Theresa Robinson and the dates of such communications;
    e.   the hourly rate at which he billed for his services;
    f.   the total bill to date for work he performed;


2.   State the following regarding any attorney or paralegal at Brown & James other than Robert Brady that had any involvement in the subject fire claim:

    a.   the date he or she was first consulted;
    b.   the person who first consulted him or her;
    c.   the number of times and dates he or she talked with Theresa Robinson;
    d.   the number of letters or emails sent to and received from Theresa Robinson and the dates of such communications;
    e.   the hourly rate at which he or she billed for services;

3.   State the following regarding Allstate's referral of fire cases or fire claims to Brown & James which were handled by attorney Robert Brady during the three year period prior the August 26, 2009 fire to present:

    a.   the number of fire claims or cases sent and the year the claim or case was sent;
    b.   the number of those claims or cases sent by Theresa Robinson and the year sent;
    c.   the amount that Brown & James was paid by Allstate for legal services on cases or claims handled by Robert Brady and the year the amounts were paid.

4.   State the following regarding any case James Brady tried to verdict where Allstate was the Defendant:

    a.   the name of the case, case number, and venue;
    b.   whether a verdict was rendered for Allstate or for the Plaintiff;
    c.   the year in which the case was tried."

6

¶ 12 On July 25, 2012, Allstate responded with objections to the plaintiffs' supplemental interrogatories. In a preface to its objections, Allstate acknowledged that the court had permitted the plaintiffs to make a limited inquiry into Brady's participation in the claims-handling process, but then asserted that the ruling was erroneous. Allstate objected to each supplemental interrogatory on grounds that the requested information was protected by the attorney-client privilege and irrelevant to the subject matter of the underlying complaint.

¶ 13 Allstate's objections to the plaintiffs' supplemental interrogatories and the plaintiffs' motion to compel answers to their initial interrogatories, numbers 12 through 15, were called for hearing on September 5, 2012. After considering the arguments of counsel, Judge Cueto ruled as follows:

> "Defendant's objections to plaintiffs' supplemental interrogatories regarding Bob Brady are overruled, however with respect to Rog 1(d), and 2(d), defendant does not have to disclose the dates of communications. Objection to Int. 4 is overruled, but plaintiff will not be allowed to ask follow up about the details of the trials, beyond what is allowed here.
>
> Objections to Interrogs. 12, 13, 14, and 15, are called & heard. Plaintiff is allowed to discover the number of times in the last five years that (a) Allstate has been cited by the Illinois Dept. of Insurance for vexatious delay or improper claims practices, or (b) that an Illinois court has awarded statutory penalties for vexatious refusal against Allstate. The remaining objections are sustained.
>
> Allstate is ordered to produce its procedure manual for handling fire loss claims in effect at the time of plaintiffs' claim, if any. Defendant may have a protective order entered."

¶ 14 On January 29, 2013, almost five months later, and without having complied with the court's rulings, Allstate filed a motion to reconsider the September 5, 2012, discovery

order. The record shows that the motion was presented to Judge Andrew Gleeson because Judge Cueto had retired. On February 20, 2013, Judge Gleeson heard arguments and denied the motion. A status conference was scheduled for May 13, 2013. By the time of that conference, Allstate still had not complied with the discovery order. Following the conference, Judge Gleeson again entered an order directing Allstate to comply with the September 5, 2012, discovery order, within 30 days.

¶ 15 On June 12, 2013, Allstate and Brady jointly filed a "Motion for Contempt For Purposes of Facilitating Appellate Review of the Court's September 5, 2012 Discovery Order." Therein, Allstate and Brady indicated that they would stand on their previous objections to the plaintiffs' initial interrogatories and supplemental interrogatories. They argued that the discovery requests at issue were irrelevant to the subject matter of the litigation; that the discovery requests at issue were overly broad, unduly burdensome, and harassing; and that the interrogatories concerning Brady and his law firm sought information protected by the attorney-client privilege. They asked the court to enter a "friendly" contempt order against Brady for the sole purpose of facilitating appellate review of the September 5, 2012, discovery order.

¶ 16 The motion was called for hearing on June 25, 2013. During the proceedings, the court expressed some irritation with the request for a "friendly" contempt order. The court asked what was so unique about this discovery order that it should be subject to interlocutory review. Allstate's attorney, Brady, replied that he had never before been ordered to produce attorney-client-privilege information in a first-party property arson case. The plaintiffs' attorney countered that this was a simple discovery matter, and

8

asked the court to impose sanctions against Allstate pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002). After considering the arguments, the court asked counsel to present proposed orders, and took Allstate's motion under advisement.

¶ 17 On January 3, 2014, the court entered an order holding Brady in civil contempt for his refusal to comply with the discovery order of September 5, 2012, and for purposes of facilitating appellate review. The court imposed a fine of $25 per day on Brady, but then stayed the sanction pending an appeal of the order. The court specifically found that Allstate and Brady did not act with contumacious disregard for the court's authority.

¶ 18                                  ANALYSIS

¶ 19 Allstate and Brady filed this interlocutory appeal to challenge the propriety of the contempt order and the underlying discovery order. Allstate and Brady contend that the trial court abused its discretion in permitting the plaintiffs to discover the number of times in the last five years that Allstate (a) was cited by the Illinois Department of Insurance for vexatious delay or improper claims practices, or (b) was ordered by an Illinois court to pay statutory penalties for vexatious conduct. They argue that the information is not relevant to any matter at issue in the plaintiffs' case. Allstate and Brady also contend that the trial court abused its discretion in permitting plaintiffs to discover information regarding Brady's involvement in the fire loss investigation. They argue that the information is irrelevant to any matter at issue and is protected by attorney-client privilege.

9

¶ 21    Discovery orders are not final orders, and they are not generally appealable. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69, 755 N.E.2d 1, 8 (2001). The correctness of a discovery order may be tested within an appeal of a contempt sanction. *Norskog*, 197 Ill. 2d at 69, 755 N.E.2d at 8. When an individual appeals a contempt sanction that was imposed for violating a discovery order, the contempt order is final and appealable, and a review of the contempt order necessarily requires a review of the discovery order upon which it is based. *Norskog*, 197 Ill. 2d at 69, 755 N.E.2d at 8. A trial court's rulings on discovery matters are generally reviewed for a manifest abuse of discretion. *Norskog*, 197 Ill. 2d at 70, 755 N.E.2d at 9. If, however, the facts are uncontroverted and the issue is the trial court's application of the law to the facts, or the issue involves the applicability of a statutory privilege, the standard of review is *de novo*. *Norskog*, 197 Ill. 2d at 70-71, 755 N.E.2d at 9.

¶ 22    Illinois Supreme Court Rule 201(b)(1) addresses the scope of pretrial discovery, and provides that unless otherwise stated in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter of the pending action, whether it relates to a claim or defense. Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014). Rule 201(b)(1) is founded on the basic premise that the object of discovery is the expeditious and final determination of controversies in accordance with the substantive rights of the parties. *Owen v. Mann*, 105 Ill. 2d 525, 530, 475 N.E.2d 886, 890 (1985); *Monier v. Chamberlain*, 35 Ill. 2d 351, 357, 221 N.E.2d 410, 415 (1966). Great latitude is allowed in the scope of discovery, and the concept of relevance for purposes of discovery is

broader than the concept of relevance for purposes of admissibility at trial. *TTX Co. v. Whitley*, 295 Ill. App. 3d 548, 556, 692 N.E.2d 790, 796 (1998). Evidence is relevant for trial purposes if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. See Ill. R. Evid. 401 (eff. Jan. 1, 2011). In contrast, relevance for discovery purposes includes not only that which is admissible at trial, but also that which leads to admissible evidence. *Whitley*, 295 Ill. App. 3d at 557, 692 N.E.2d at 797. With these principles in mind, we first consider whether the requested discovery is germane to any theory of the case or any defense.

¶ 23                    *Interrogatories 12 - 15: The Plaintiffs' Theories*

¶ 24   As previously noted, the plaintiffs asserted two theories of liability in their third amended complaint, breach of contract and common law fraud. In the fraud claim, the plaintiffs allege that Allstate's agent knowingly made false statements of material fact during the claims process for the purpose of inducing them to act in reliance on the statements, that they acted in reliance on those statements, and were thereby damaged. In the breach of contract claim, plaintiffs allege that Allstate vexatiously and unreasonably denied payment of insurance benefits to the plaintiffs in breach of its duties and obligations under the homeowners' insurance contract for which they seek contractual damages and statutory penalties under section 155 of the Code.

¶ 25   Section 155 provides an extracontractual remedy to policyholders when an insurer's action in handling a claim is vexatious and unreasonable. 215 ILCS 5/155 (West 2010); *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 518-22, 675 N.E.2d

11

897, 900-02 (1996). This extracontractual remedy is intended to make suits by policyholders economically feasible and to punish insurance companies for misconduct. *Cramer*, 174 Ill. 2d at 520, 675 N.E.2d at 901. The key question raised in a section 155 claim is whether the conduct of the insurance company was vexatious and unreasonable. *O'Connor v. Country Mutual Insurance Co.*, 2013 IL App (3d) 110870, ¶ 13, 999 N.E.2d 705; *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 681, 734 N.E.2d 144, 151 (2000). In considering this question, a court must consider the totality of the circumstances, including the insurer's duties under the insurance contract, the insurer's attitude and motivation for denying or delaying payment of the claim, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his or her property. *McGee*, 315 Ill. App. 3d at 681, 734 N.E.2d at 151.

¶ 26 At various points during the litigation, the parties have suggested that section 154.6 of the Code (215 ILCS 5/154.6 (West 2010)) may provide guidance as to whether an insurer's conduct is vexatious and unreasonable. Section 154.6 identifies several acts that could constitute improper claims practices by an insurer, provided that one or more of the acts were committed knowingly and without just cause, and with a frequency indicating a persistent propensity to engage in that type of conduct. 215 ILCS 5/154.5, 154.6 (West 2010). Section 154.6 is a regulatory provision that comes within the purview of the State Director of Insurance. 215 ILCS 5/154.7, 154.8 (West 2010). It does not provide a policyholder with a private remedy or cause of action for an insurer's improper claims practice. *Area Erectors, Inc. v. Travelers Property Casualty Co. of America*, 2012 IL App (1st) 111764, ¶ 30, 981 N.E.2d 1120. That said, after careful

12

consideration of the acts described in section 154.6, we find that some of the acts are illustrative of conduct by an insurer that may give rise to a remedy for vexatious or unreasonable conduct under section 155. Accordingly, we conclude that when determining whether an insurer's conduct in a given case is vexatious and unreasonable under the totality of the circumstances, a court may properly consider actions identified as improper claims practices under section 154.6 as relevant to, but not dispositive of, a section 155 claim.

¶ 27 To illustrate this point, we note that engaging in activity that results in a disproportionate number of meritorious complaints against an insurer made to the Illinois Department of Insurance and engaging in activity which results in a disproportionate number of lawsuits by claimants against an insurer are among the acts in section 154.6 that may constitute improper claims practices. 215 ILCS 5/154.6(f), (g) (West 2010). In this case, we believe that the plaintiffs could properly ask whether, within the five-year period preceding their fire loss, Allstate had ever been cited by the Director of Insurance for improper claims practices arising under subsections 154.6(f) and (g) of the Code, because these subjects are relevant to the plaintiffs' claims for breach of contract, section 155 penalties, and fraud.

¶ 28 *Interrogatories 12 - 15: The Trial Court's Rulings*

¶ 29 Having identified the issues raised by the plaintiffs' pleadings, we now consider Allstate's objections to interrogatories 12 through 15, and the trial court's rulings on those objections. The complete text of the September 5, 2012, discovery order was set forth earlier in this decision. The portion that is pertinent to this discussion is restated here:

13

"Objections to Interrogs. 12, 13, 14, and 15, are called & heard. Plaintiff is allowed to discover the number of times in the last five years that (a) Allstate has been cited by the Illinois Dept. of Insurance for vexatious delay or improper claims practices, or (b) that an Illinois court has awarded statutory penalties for vexatious refusal against Allstate. The remaining objections are sustained.

Allstate is ordered to produce its procedure manual for handling fire loss claims in effect at the time of plaintiffs' claim, if any. Defendant may have a protective order entered."

After reviewing this section of the discovery order, it is fair to say that there are some inconsistencies and ambiguities which make the rulings unclear. There is no transcript of proceedings in the record, and so we are left to sort out the rulings with little information about the trial court's true intention.

¶ 30   Initially, we will consider interrogatories 12 and 15 because the trial court recrafted these two interrogatories as parts (a) and (b) in the above section of the discovery order. Allstate objected to interrogatories 12 and 15 on grounds that the questions were overly broad, unduly burdensome, and sought information that was irrelevant to any issue. Allstate also claimed that the information was protected under the work-product privilege and the attorney-client privilege. According to the record, the trial court did not specifically rule on each basis for Allstate's objections to interrogatories 12 and 15, but instead, reframed the questions posed in those interrogatories. This created two ambiguities. First, according to the ruling, the plaintiffs were permitted to discover the number of times in the last five years that Allstate has

14

been cited by the Illinois Department of Insurance for vexatious delay or improper claims practices, *or* the number of times in the last five years that an Illinois court has awarded statutory penalties for vexatious refusal against Allstate. The word "or" is ordinarily used as an exclusive disjunction, meaning one or the other, but not both. If "or" is read as an exclusive disjunction, then the ruling requires the plaintiffs to choose whether to inquire about citations issued by the Director of Insurance or about statutory penalties imposed by Illinois courts, but not both. In this case, however, both topics are relevant for discovery purposes, and we find no rationale for requiring the plaintiffs to choose one over the other. Next, we note that the trial court's version of interrogatories 12 and 15 does not address the subparts posed in these interrogatories. When the court recrafted these questions, it neither mentioned nor ruled on the relevance of the subparts in interrogatories 12 and 15. After reviewing the record, we find that the information requested in interrogatories 12 and 15, including the subparts, is relevant for discovery purposes. Therefore, we find that Allstate's relevance objections to interrogatories 12 and 15 are without merit and should have been overruled.

¶ 31    After reviewing the record, we find that Allstate's objections to interrogatories 12 and 15 are without merit and should have been overruled. As previously noted, the trial court's rulings on Allstate's objections, and its rationale for those rulings, are not clear. Therefore, for the sake of clarity, we vacate that portion of the discovery order in which the trial court recrafted interrogatories 12 and 15. This case will be remanded to the circuit court, and upon remand, we direct the circuit court to order Allstate to answer

interrogatories 12 and 15, including all subparts, within 30 days from the date of the appellate court's mandate, and to further order that no extensions will be granted.

¶ 32    We next consider the trial court's rulings as to interrogatory 13.  Interrogatory 13 asks whether during the last five years, any insureds have filed actions in Illinois against Allstate for alleged failure to pay a fire loss claim.  Allstate objected on grounds that the interrogatory was overly broad and unduly burdensome, that the information sought was irrelevant, and that it was protected by the work-product and attorney-client privileges. There is nothing in the record indicating that Allstate attempted to defend on any of these grounds, other than relevance.  Based on our interpretation of the discovery order, the trial court sustained all of the grounds for Allstate's objection.  After reviewing the record, we find that for discovery purposes, interrogatory 13 seeks information relevant to each theory of the plaintiffs' case.  Further, Allstate has not shown that the request was overbroad or that providing an answer would be unduly burdensome.  Allstate did not submit a privilege log, and it has not otherwise shown that the requested information is protected under the work-product privilege or the attorney-client privilege.   After reviewing the record, we find that the trial court abused its discretion in sustaining Allstate's objections to interrogatory 13, and we vacate that order.  Upon remand, the circuit court is directed to order Allstate to answer interrogatory 13, including all subparts, within 30 days from the date of the appellate court's mandate, and to further order that no extensions will be granted.

¶ 33    We next consider the trial court's rulings regarding interrogatory 14.  Interrogatory 14 asks whether Allstate had a policy manual or any other documents for handling fire

loss claims at the time of the plaintiffs' loss. Again, Allstate objected on all of the same grounds as stated in the other three interrogatories. Again, we find no indication that Allstate intended to defend on any of the grounds claimed except relevance. Based upon our reading of the discovery order, the court sustained all objections to interrogatory 14, but then ordered Allstate to produce the fire loss procedure manual. Allstate produced a manual, but did not produce any other documents regarding its fire loss claims-handling procedures. After reviewing the record, we find that the information sought in interrogatory 14 is relevant to the plaintiffs' theories of the case and that the trial court erred in sustaining Allstate's grounds for objections. For clarity's sake, we affirm that portion of the order requiring Allstate to produce its procedure manual, and we vacate that portion of the order sustaining Allstate's objections to interrogatory 14. Upon remand, the circuit court is directed to order Allstate to answer interrogatory 14, including identifying any other documents, guidelines, checklists, and procedure manuals regarding the handling of fire loss claims that were in effect at the time of the plaintiffs' loss, within 30 days from the date of the appellate court's mandate, and to further order that no extensions will be granted.

¶ 34 To this point in this decision, we have gone through the tedious process of reviewing each interrogatory, each stated ground for objection, and each ruling at issue. During that process, we noted that Allstate had raised the identical grounds for objection as to interrogatories 12, 13, 14, and 15, and we found no indication that Allstate defended any of these stated grounds, except for relevance. As a result, we believe it appropriate and necessary to comment on this tendency of civil litigators, both plaintiffs' counsel and

17

defendants' counsel, to tender stock, formulaic objections to discovery requests, and then, when the objections are called for hearing, to completely abandon those grounds without consequence. In too many cases, counsel propound objections to discovery requests, followed by a litany of grounds, without any intent or means to defend them. The apparent willingness of opposing counsel and trial courts to accept this tactical approach as "status quo" fuels an already strong temptation to make stock, frivolous objections to discovery requests. This interferes with the efficient and expeditious administration of the pending case, and negatively impacts the other cases on the court's docket.

¶ 35    Our discovery rules provide procedural tools to educate the parties in advance of trial about the merits of their claims and defenses and to promote the prompt and just disposition of litigation. When an objection to a discovery request is based on relevance, the party seeking the discovery has the obligation to establish how the discovery requested is relevant. When an objection is based on attorney-client privilege or work-product privilege, the objecting party has the burden to specifically identify the privilege, and must submit a privilege log describing the nature of the documents, communications, or things not produced, and the exact privilege being claimed. Ill. S. Ct. R. 201(n) (eff. July 1, 2014). When the objection is based on the grounds that the interrogatory is overly broad, unduly burdensome, or harassing, once again, it is the objecting party that has the obligation to offer an adequate defense to the grounds claimed.

¶ 36    In our view, an attorney abuses the discovery process when he or she asserts a litany of grounds for objection to discovery without any intention or any ability to defend those grounds. In the face of discovery abuses, it is incumbent upon the opposing party

18

to promptly request relief, and it is incumbent upon the trial court to consider the request, and, where indicated, to issue orders that will discourage further abuse. Before ruling on such a request, the trial court considers whether there is a good faith basis for the objection having been interposed. The court must determine whether the objecting party has set forth a colorable claim of privilege or whether the objector has made an adequate showing that compiling the requested information would require substantial expense, labor, or disruption of business.

¶ 37 Our supreme court rules provide trial courts with a variety of sanctions to encourage compliance with, and discourage abuse of, the discovery process. Supreme Court Rule 201(c) authorizes the trial court to supervise discovery and to issue protective orders. Ill. S. Ct. R. 201(c) (eff. July 1, 2014). Supreme Court Rule 219 provides consequences for refusal to comply with discovery rules and orders, including the barring of evidence, the striking of pleadings, and the entry of a judgment. Ill. S. Ct. R. 219 (eff. July 1, 2002). Supreme Court Rule 137 authorizes the court to impose sanctions on a party or attorney who files a pleading that is not well grounded in fact or law, or that is interposed for an improper purpose. Ill. S. Ct. R. 137 (eff. July 1, 2013). When a trial court is presented with a motion to rule on objections or discovery matters, the court must promptly rule on those matters. The failure to issue a ruling, and where appropriate, to impose sanctions, constitutes an abuse of the court's discretion, and an abdication of its authority and responsibility.

¶ 38 We openly acknowledge that the foregoing conversation regarding the roles of the parties regarding discovery disputes is a remedial primer rather than a new declaration.

19

But, given the manner in which discovery has proceeded in the case before us, we believe it was necessary.

¶ 39    Though decades old, the admonitions by our supreme court echo loudly here. Discovery is not a tactical game. *Williams v. A.E. Staley Manufacturing Co.*, 83 Ill. 2d 559, 566, 416 N.E.2d 252, 256 (1981). "Discovery is intended as, and should be, a cooperative undertaking by counsel and the parties, conducted largely without court intervention, for the purpose of ascertaining the merits of the case and thus promoting either a fair settlement or a fair trial." *Williams*, 83 Ill. 2d at 566, 416 N.E.2d at 256. Truthful disclosure is the object of all discovery procedures. *Buehler v. Whalen*, 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467 (1977). Stock objections and fractional disclosures render our discovery rules and procedures meaningless. *Buehler*, 70 Ill. 2d at 67, 374 N.E.2d at 467. Such tactics delay the search for truth, waste judicial resources, and should not be condoned by the parties or the trial court. We hope that this will serve as an admonition that asserting an objection followed by a litany of hollow grounds, without the intention or means to defend those grounds, is an abuse of the discovery process that may warrant sanctions. In addition, litigants are reminded that a bald objection preserves nothing for review.

¶ 40    *Allstate's Objections and the Court's Ruling on Supplemental Interrogatorie*s

¶ 41    We now consider the portion of the September 5, 2012, discovery order pertaining to the plaintiffs' supplemental interrogatories 1 through 4. Interrogatories 1 through 4 seek information regarding the involvement of Allstate's attorney, Robert Brady, in the investigation of the plaintiffs' claim and other insurance claims during the three-year

20

period prior to the date of the plaintiffs' loss.  It is undisputed that Brady's questioning of the plaintiffs is relevant and discoverable.  According to the record, the transcripts from Brady's examinations of the plaintiffs have already been produced to the plaintiffs.  After reviewing the specific allegations in the plaintiffs' complaint, we find that the plaintiffs have failed to show that the other information requested in their supplemental interrogatories is relevant or will lead to the discovery of information relevant to their stated theories of the case.  Therefore, we find that the trial court erred in overruling Allstate's relevance objections to the supplemental interrogatories, and we vacate those rulings.

¶ 42                    *The Contempt Order and Monetary Sanction*

¶ 43   Allstate and Brady have asked that the contempt order and monetary sanction be vacated.  As noted previously, the correctness of a discovery order may be tested through contempt proceedings.  *Norskog*, 197 Ill. 2d at 69, 755 N.E.2d at 8.  The record reflects that Allstate and Brady requested the contempt order for the purpose of testing the correctness of the discovery order.  The trial court initially balked at Allstate's request for a "friendly" contempt order, questioning whether there was anything extraordinary about the discovery order, but eventually issued a contempt order and sanction.  After reviewing this record, we share the trial court's initial sense of impatience and irritation with Allstate's challenges to the September 5, 2012, discovery order.  We recognize that there are discovery orders which present unique or unsettled questions of law requiring interlocutory review, but the September 5, 2012, discovery order is not one of them.  Nevertheless, we will not disturb the court's finding that Brady and Allstate did not act in

21

contumacious disregard of its orders. Accordingly, the order of contempt and the monetary sanction are hereby vacated.

¶ 44                                              CONCLUSION

¶ 45   In summary, Allstate's objections to interrogatories 12, 13, 14, and 15 are overruled, and Allstate's relevance objections to supplemental interrogatories 1, 2, 3, and 4 are sustained. Upon remand, the circuit court is directed to order Allstate to answer interrogatories 12, 13, 14, and 15, in their entirety, including all subparts, within 30 days from the date of the appellate court's mandate, and to further order that no extensions will be granted.

¶ 46   For the reasons stated, the contempt order and monetary sanction are hereby vacated, the September 5, 2012, discovery order is affirmed in part, reversed in part, and vacated in part, and the cause is remanded for proceedings consistent with this opinion.


¶ 47   Affirmed in part, reversed in part; vacated in part; remanded with directions.

2016 IL App (5th) 140056

NO. 5-14-0056

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| VALENTINE ZAGORSKI and CHRISTINA ZAGORSKI, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 10-L-148 |
| ALLSTATE INSURANCE COMPANY, | ) ) ) | Honorable |
| Defendant-Appellant | ) ) | Lloyd A. Cueto and Andrew J. Gleeson, |
| (Robert L. Brady, Contemnor-Appellant). | ) | Judges, presiding. |

_____

**Opinion Filed:** May 16, 2016
_____

**Justices:**       Honorable Judy L. Cates, J.

Honorable Thomas M. Welch, J., and
Honorable Richard P. Goldenhersh, J.,
Concur
_____

**Attorney for Appellants**       Robert L. Brady, Brown & James, P.C., 800 Market Street, Suite 1100, St. Louis, MO 63101-2501
_____

**Attorney for Appellees**       John H. Leskera, Leskera Law Firm, 120 E. Church Street, Collinsville, IL 62234
_____