NOTICE
Decision filed 11/24/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 210074-U

NO. 5-21-0074

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| PAUL GRAVES, Special Administrator of the Estate of Alfred Graves, Deceased; DIANA OBERNUEFEMANN, Executor of the Estate of Kathleen Adams, Deceased; and LAW OFFICE OF ROBERT H. GREGORY, P.C., | ) ) ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 14-L-1445 |
| BRAVO CARE OF EDWARDSVILLE, INC.; ROSEWOOD CARE CENTER HOLDING COMPANY; MICHAEL BRADY; LARRY VANDER MATEN; DARRELL HOEFLING; and ROSEWOOD CARE CENTER, LLC, | ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Sarah D. Smith, |
| (Larry Vander Maten, Defendant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion when the court denied the defendant's motions for a protective order and ordered the defendant to produce his income tax returns for the years of 2011 through 2017 and documents related to the December 30, 2013, sale of the Rosewood Care Center and other related entities.

1

¶ 2    The plaintiffs, Paul Graves, special administrator of the estate of Alfred Graves, deceased; Diana Obernuefemann, executor of the estate of Kathleen Adams, deceased; and the Law Office of Robert H. Gregory, P.C., filed a complaint against the defendants Bravo Care of Edwardsville, Inc. (Bravo Care); Rosewood Care Center Holding Company (Rosewood Holding); Michael Brady; Larry Vander Maten; and Darrell Hoefling. The complaint was amended to include Rosewood Care Center, LLC (Rosewood LLC) as a defendant. In their lawsuit, the plaintiffs sought to pierce the corporate veil of Rosewood Care Center, Inc. of Edwardsville (RCCIE),[1] a long-term care and skilled nursing facility. Plaintiffs sought to hold the defendants liable for unpaid judgments, including postjudgment interest, for injuries sustained by the decedents while residents at RCCIE as well as attorney fees and costs.

¶ 3    During the proceedings below, Vander Maten refused to comply with a discovery order entered by the circuit court directing him to produce certain documents requested by the plaintiffs. At the request of Vander Maten's counsel, the circuit court found Vander Maten to be in "friendly" contempt and assessed a $50 sanction for his failure to comply with the court's discovery order. Vander Maten appeals the contempt order and the underlying discovery order. For the following reasons, we vacate the contempt order and monetary sanction, affirm the underlying discovery order, and remand this case for further proceedings.

---

[1]On February 6, 2008, Rosewood Care Center, Inc. of Edwardsville changed its name to Hovan Services of Edwardsville, Inc. For clarity's sake, we will refer to these corporate entities, generally, as RCCIE.

¶ 4                          BACKGROUND

¶ 5     Although the instant appeal was brought solely by Vander Maten regarding a contempt order for failure to comply with the circuit court's discovery order, the proceedings below involved multiple defendants, corporate entities, and unpaid judgments from civil lawsuits brought by the plaintiffs. Thus, a brief overview of the parties, the structure of the corporate entities, and the civil lawsuits at issue in the proceedings below is necessary for context.

¶ 6     RCCIE was incorporated in Illinois to operate a long-term care and skilled nursing facility. RCCIE operated from sometime in 1994 until June 15, 2007, when its license to operate issued by the Illinois Department of Public Health (IDPH) expired. Vander Maten was the president of RCCIE. The sole shareholder of RCCIE was Rosewood LLC, a Kansas limited liability company. The sole member of Rosewood LLC was Rosewood Holding. Vander Maten owned 75% of Rosewood Holding's shares indirectly through family trusts and partnerships. Codefendant Hoefling, who is now deceased, owned the other 25% of Rosewood Holding's shares through family trusts and partnerships. The real estate on which RCCIE operated was owned by Edwardsville Real Estate LLC (Edwardsville Real Estate). Vander Maten was the president of Edwardsville Real Estate. The lease between RCCIE and Edwardsville Real Estate expired on or about June 15, 2007. RCCIE claimed that it vacated the property and ceased all operations shortly after June 15, 2007, although the daily operations of the skilled nursing facility continued uninterrupted.

¶ 7     On July 1, 2007, Vander Maten, in his capacity as president of RCCIE, executed an "Asset Purchase and Sale Agreement" (Agreement) with Bravo Care, whose president and

3

principal shareholder was codefendant Brady, a former officer of "one or more of the Rosewood affiliates." Bravo Care was owned by Bravo Holding Company (Bravo Holding), which in turn was owned by Brady. In the Agreement, Bravo Care purchased certain supplies, leasehold improvements, food, and medical equipment from RCCIE for the sum of $30,000.[2] Bravo Care later received the right to use the name "Rosewood Care Center." Bravo Care had also negotiated a lease with Edwardsville Real Estate. In addition to paying rent, Bravo Care "received services from and paid money to other related corporate entities" whose president and principal shareholder was Vander Maten. On October 1, 2007, Bravo Care received its license from IDPH and began its operations as Rosewood Care Center. On June 28, 2010, RCCIE was voluntarily dissolved by the Illinois Secretary of State.

¶ 8     On December 30, 2013, "all shares or member interests of corporations and limited liability companies, respectively, which owned real estate assets and other assets involved in the operation of the Rosewood Care Center businesses" were sold to an unrelated third party. Brady also sold his outstanding shares in Bravo Holding and its subsidiaries to the same party. In a deposition, Vander Maten indicated that he sold Edwardsville Real Estate along with all other Rosewood associated entities to a firm named Cahill Rosewood Number 1 (Cahill).

¶ 9     The decedents, Alfred Graves and Kathleen Adams, sustained injuries while residents of RCCIE. Paul Graves, special administrator of the estate of Alfred Graves,

---

[2]The plaintiffs contend that the Agreement included the sale of the right to operate the nursing facility. Vander Maten disputes this contention.

4

deceased, filed a lawsuit against RCCIE under the Nursing Home Care Act (Act) (210 ILCS 45/3-601 to 3-612 (West 2002)) for injuries sustained by Alfred Graves in January of 2003. After an initial mistrial because of a deadlocked jury, a second jury trial resulted in a verdict in favor of Paul Graves in the amount of $149,115.13. Judgment was entered on the verdict on April 29, 2009. RCCIE appealed, and this court affirmed. See *Graves v. Rosewood Care Center, Inc.*, 2012 IL App (5th) 100033. RCCIE petitioned for leave to appeal this court's decision, but the Illinois Supreme Court denied RCCIE's petition. See *Graves v. Rosewood Care Center, Inc., of Edwardsville*, No. 114091 (Ill. May 30, 2012).

¶ 10   Diana Obernuefemann, executor of the estate of Kathleen Adams, deceased, also filed a lawsuit against RCCIE under the Act for injuries sustained by Kathleen Adams in June 2006. In this case, RCCIE defended itself through a jury trial and posttrial motions. Judgment was entered on March 11, 2013, in favor of Obernuefemann in the amount of $273,607.50. No appeals were taken from this judgment.

¶ 11   Attorney Robert Gregory, of the Law Office of Robert H. Gregory, P.C., represented Graves and Obernuefemann in their cases against RCCIE. Gregory received the following judgments in his favor: (1) $162,087.09 on July 21, 2010; (2) $21,210.05 on April 27, 2012; and (3) $168,250.94 on October 9, 2013.

¶ 12   On October 23, 2014, the plaintiffs filed their lawsuit to pierce RCCIE's corporate veil and hold the defendants liable for the judgments, including postjudgment interest, as well as attorney fees and costs. In their amended complaint, the plaintiffs asserted that RCCIE had failed and refused to pay the judgments the plaintiffs obtained against RCCIE. The plaintiffs asserted that RCCIE failed to carry liability insurance for injuries to residents

5

and failed to have any form of security for liability against RCCIE. The plaintiffs further asserted that RCCIE dissolved without sufficient assets to satisfy the plaintiffs' judgments.

¶ 13    As to Vander Maten, the plaintiffs alleged that Vander Maten and Hoefling "devised an elaborate corporate scheme" to "manipulate and move all income and/or profit derived from the operation of [RCCIE] out of any and all accounts held in the name of [RCCIE] so as to make said corporation judgment-proof." The plaintiffs asserted that RCCIE was undercapitalized as a result of this scheme. The plaintiffs further alleged that Vander Maten and Hoefling exercised complete control over RCCIE and that RCCIE was a mere alter ego for Vander Maten and Hoefling. The plaintiffs contended that adherence to the fiction of a separate corporate existence for RCCIE would sanction fraud, promote injustice, and result in inequitable consequences.

¶ 14    On August 21, 2018, the plaintiffs served Vander Maten with a request for production pursuant to Illinois Supreme Court Rule 214 (eff. July 1, 2018). The plaintiffs requested that Vander Maten produce "[p]ersonal income tax returns, state and federal, including 1099s, W-2s and all other attachments for the past seven years, from 2011 to 2017, inclusive."

¶ 15    Vander Maten objected to the plaintiffs' request for production and moved for a protective order. Vander Maten asserted that the requested information was confidential, overbroad, intended to harass Vander Maten, privileged, irrelevant, and not discoverable. Vander Maten argued that the tax returns were irrelevant and not discoverable because his income was not an issue in the case and because the plaintiffs were not seeking punitive damages. Vander Maten also asserted that his spouse, with whom he jointly filed the tax

6

returns, was not a party to the proceedings and did not consent to the disclosure of her tax returns.

¶ 16    In response, the plaintiffs alleged that RCCIE dissolved on June 28, 2010, without sufficient assets to pay its creditors but was able to "vigorously defend" itself through at least October 2013 against the civil injury lawsuits brought by the plaintiffs. The plaintiffs asserted that a "legitimate area of inquiry" was the source of the funds utilized to pay defense counsel and litigation costs after June 28, 2010, and whether Vander Maten received taxable income from RCCIE after its dissolution. The plaintiffs also alleged that based on a deposition of Vander Maten, RCCIE paid large sums of money "for rent and administrative services, among others," to Edwardsville Real Estate and other related entities "owned and/or controlled" by Vander Maten. The plaintiffs asserted that the amount of income Vander Maten received from these related party transactions, and whether his income increased, decreased, or remained the same after RCCIE's dissolution, was a relevant area of inquiry justifying disclosure of Vander Maten's 2011 through 2017 income tax returns.

¶ 17    In reply, Vander Maten argued that the discovery already produced showed that he did not receive income from RCCIE, directly or indirectly, after RCCIE ceased operations in June 2007. Vander Maten alleged that the plaintiffs were aware that RCCIE generated no income after its dissolution. Thus, Vander Maten claimed the requested tax returns were irrelevant. Vander Maten further argued that his tax returns were not probative to a determination of whether RCCIE's corporate veil should be pierced. Vander Maten asserted that the discovery already produced did not reveal any evidence of inadequate

7

capitalization or commingling of funds. Vander Maten further asserted that stock was issued to the shareholder; that corporate formalities were observed, "as demonstrated by corporate minutes"; that a showing that RCCIE was insolvent prior to its dissolution could not be made; and that the two directors and other officers "were functioning as required."

¶ 18     On November 29, 2018, the circuit court entered an order directing Vander Maten to produce his tax returns for the period of 2011 through 2017 for *in camera* review. Vander Maten filed a motion to modify the circuit court's order to limit the production of the tax returns to the years of 2011 through 2013. Vander Maten reasoned that his interest in the "Rosewood nursing home operations" had been sold and that he had no interest in any asset associated with its operation after December 30, 2013. Vander Maten subsequently produced his tax returns for 2011 through 2013, along with a memorandum, for the circuit court's *in camera* review. In his memorandum, Vander Maten indicated that if the circuit court ordered Vander Maten to comply with the plaintiffs' discovery request, he did not intend to comply with such an order and would request to be held in contempt pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) in order to obtain appellate review.

¶ 19     On January 31, 2019, the circuit court entered an order denying Vander Maten's motion to modify and ordered that he produce the returns for 2014 through 2017 for the court's *in camera* review. The circuit court further ordered that Vander Maten submit a memorandum explaining the relationships between the entities in the tax returns and the judgment debtor as well as how any income or revenue received by Vander Maten related to the judgment debtor. In compliance with the circuit court's order, Vander Maten

8

provided the court with his tax returns for the years of 2014 through 2017 and a memorandum concerning the relationship between the entities in the tax returns.

¶ 20    On March 11, 2019, the plaintiffs served Vander Maten with a supplemental request for production. The plaintiffs' supplemental request for production requested all documents pertaining to the December 30, 2013, sale of the nursing facility "commonly known as Rosewood Care Center," Edwardsville Real Estate, and other related entities. The plaintiffs also requested all documents related to legal proceedings between Vander Maten, or entities for which he was an owner, operator, shareholder, manager, officer, or director, and Cahill regarding the sale of the Rosewood Care Center. The plaintiffs noted that in Vander Maten's deposition, he indicated that he was a judgment creditor of Cahill.

¶ 21    Vander Maten filed a motion for a protective order regarding the plaintiffs' supplemental request for production. He asserted that the requested documents were irrelevant to the plaintiffs' lawsuit seeking to pierce the corporate veil of RCCIE. In response, the plaintiffs asserted that their request for production "may likely lead to admissible evidence as to whether assets of the judgment debtor corporation (Rosewood Care Center) were diverted from the corporation by or to a stockholder or other person or entity to the detriment of creditors in the underlying litigation."

¶ 22    On August 7, 2020, the circuit court entered an order denying Vander Maten's motion for a protective order regarding his tax returns. The circuit court also denied in part and granted in part Vander Maten's motion for a protective order as to the plaintiffs' supplemental request for production. The circuit court found that the information in the

requested tax returns and the documents related to the December 30, 2013, sale of the Rosewood Care Center and other related entities may lead to admissible evidence concerning the first prong of the test for piercing the corporate veil.[3] The circuit court further found that the plaintiffs' request was not made to annoy, cause additional expense, embarrass, or otherwise disadvantage the defendants. The circuit court granted Vander Maten's motion for a protective order for the documents pertaining to the legal proceedings between Vander Maten and Cahill. The circuit court found that requiring Vander Maten to obtain this information would be unduly burdensome because the information was publicly available and equally accessible by the plaintiffs.

¶ 23    The plaintiffs and Vander Maten filed motions to reconsider. On November 5, 2020, the circuit court heard arguments on the parties' motions and preliminarily denied them. On February 17, 2021, the circuit court entered an order formally denying the motions to reconsider. The circuit court ordered that Vander Maten produce the documents detailed in the court's August 7, 2020, order.

¶ 24    On February 24, 2021, an order memorializing the circuit court's proceedings of November 5, 2020, was entered. This order provided that the circuit court had denied the motions to reconsider and reiterated that Vander Maten was to produce the requested tax returns and the documents related to the December 30, 2013, sale of the Rosewood Care

---

[3]The two-prong test for piercing the corporate veil is as follows: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 500 (2005).

10

Center and other related entities. The order further provided that counsel for Vander Maten indicated that he wished to seek appellate review of the circuit court's discovery ruling. Counsel orally moved for an order under Rule 304(b)(5) finding Vander Maten in civil contempt and requested that further discovery be stayed pending appellate review. In its written order, the circuit court found Vander Maten to be in "friendly" contempt of the order dated August 7, 2020, and the court's November 5, 2020, ruling. The circuit court imposed a $50 sanction and ordered that discovery be stayed pending appellate review. This appeal followed.

¶ 25                                    ANALYSIS

¶ 26    The defendant filed this interlocutory appeal to challenge the propriety of the circuit court's contempt order and the underlying discovery order. Vander Maten contends that the circuit court abused its discretion by denying Vander Maten's motion for a protective order and ordering him to produce the following: (1) tax returns for the years of 2011 through 2017 and (2) documents pertaining to the December 30, 2013, sale of the Rosewood Care Center and other related entities. Vander Maten argues that the requested information is irrelevant to the plaintiffs' case to pierce the corporate veil of RCCIE. Vander Maten further argues that his tax returns are not discoverable because his income is not an issue in the plaintiffs' case and because his wife, with whom he jointly filed his tax returns, does not consent to the disclosure of the requested tax returns.

¶ 27    Discovery orders are not final orders and, generally, are not appealable. *Zagorski v. Allstate Insurance Co.*, 2016 IL App (5th) 140056, ¶ 21 (2016). A party may, however, test the correctness of a discovery order within an appeal of a contempt sanction. *Zagorski*,

11

2016 IL App (5th) 140056, ¶ 21. A contempt order is final and appealable when a contempt sanction was imposed for violating a discovery order. *Zagorski*, 2016 IL App (5th) 140056, ¶ 21. Review of the contempt order necessarily requires a review of the discovery order upon which the contempt order was based. *Zagorski*, 2016 IL App (5th) 140056, ¶ 21. This court reviews a circuit court's rulings on discovery matters for a manifest abuse of discretion. *Zagorski*, 2016 IL App (5th) 140056, ¶ 21. If the facts are uncontroverted and the issue is the trial court's application of the law to the facts, or the issue involves the applicability of a statutory privilege, our review is *de novo*. *Zagorski*, 2016 IL App (5th) 140056, ¶ 21.

¶ 28    Illinois Supreme Court Rule 201(b)(1) (eff. July 1, 2014) addresses the scope of pretrial discovery. Rule 201(b)(1) provides that unless otherwise stated in the discovery rules, "a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party." Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014). Rule 201(b) is founded on the basic premise that the objective of discovery is the expeditious and final determination of controversies in accordance with the parties' substantive rights. *Zagorski*, 2016 IL App (5th) 140056, ¶ 22. Great latitude is allowed in the scope of discovery, and the concept of relevance for discovery purposes is broader than the concept of relevance for the purpose of the admission of evidence at trial. *Zagorski*, 2016 IL App (5th) 140056, ¶ 22. For trial purposes, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R.

Evid. 401 (eff. Jan. 1, 2011). Relevance for discovery purposes, however, includes not only that which is admissible at trial, but also that which leads to admissible evidence. *Zagorski*, 2016 IL App (5th) 140056, ¶ 22. With these principles in mind, we consider whether the requested discovery is germane to any theory of the case or any defense. *Zagorski*, 2016 IL App (5th) 140056, ¶ 22.

¶ 29    Here, the plaintiffs seek to pierce the corporate veil of RCCIE and hold Vander Maten and the other defendants liable for the unpaid judgments against RCCIE. If a corporate entity is merely the alter ego or business conduit of another person or entity, a court may disregard the corporate entity and pierce the veil of limited liability. *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 500 (2005). The doctrine of piercing the corporate veil imposes liability on the individual or entity that uses a corporation merely as an instrumentality to conduct that individual's or entity's business. *Fontana*, 362 Ill. App. 3d at 500. This doctrine is an equitable remedy. *Fontana*, 362 Ill. App. 3d at 500. It is not itself a cause of action but rather a means of imposing liability on an underlying cause of action, such as a tort claim or a breach of contract. *Fontana*, 362 Ill. App. 3d at 500. A party seeking to pierce the corporate veil bears the burden of making a substantial showing that one corporation is really a dummy or sham for another. *Fontana*, 362 Ill. App. 3d at 500.

¶ 30    A two-prong test is utilized to determine whether the corporate veil should be pierced: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would

13

sanction a fraud, promote injustice, or promote inequitable consequences. *Fontana*, 362 Ill. App. 3d at 500. In determining whether the "unity of interest and ownership" prong is met, a court will consider many factors, including:

> "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders." (Internal quotation marks omitted.) *Gass v. Anna Hospital Corp.*, 392 Ill. App. 3d 179, 186 (2009).

The second prong of the test to pierce the corporate veil requires an inquiry into whether there is some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest. *Gass*, 392 Ill. App. 3d at 186. Actual fraud is not necessary to pierce the corporate veil. *Fontana*, 362 Ill. App. 3d at 507. Limited liability may be discarded to prevent injustice or inequitable consequences. *Fontana*, 362 Ill. App. 3d at 507.

¶ 31 We first consider the court's order directing the production of Vander Maten's 2011 through 2017 tax returns. In their amended complaint, the plaintiffs alleged that Vander Maten and Hoefling devised an elaborate corporate scheme to render RCCIE

14

judgment-proof and that RCCIE was undercapitalized as a result of this scheme. The plaintiffs further alleged that Vander Maten and Hoefling exercised complete control over RCCIE and that RCCIE was merely an alter ego for Vander Maten and Hoefling. In their objection to Vander Maten's motion for a protective order, the plaintiffs made several assertions explaining why the tax returns were relevant to their case for piercing the corporate veil of RCCIE. The plaintiffs alleged that RCCIE was able to continue defending itself against civil injury claims brought by the plaintiffs following RCCIE's dissolution on June 28, 2010. The plaintiffs asserted that the source of the funds to pay for counsel and litigation costs was a "legitimate area of inquiry." The plaintiffs also alleged that the requested tax returns would show whether Vander Maten received income from RCCIE after its dissolution. We note that Vander Maten was the president of RCCIE, and that Rosewood LLC was the sole shareholder of RCCIE. We further note that Vander Maten owned 75% of Rosewood Holding which was the sole member of Rosewood LLC. Finally, the plaintiffs alleged that RCCIE paid large sums of money from its income to entities owned or controlled by Vander Maten, including but not limited to, Edwardsville Real Estate. The plaintiffs contended that the amount of income Vander Maten received from these related entities, and whether it increased, decreased, or remained the same following RCCIE's dissolution, justified the disclosure of Vander Maten's 2011 through 2017 tax returns. Thus, Vander Maten's income was relevant to the plaintiffs' case for piercing the corporate veil of RCCIE.

¶ 32    The circuit court found that the requested tax returns may lead to admissible evidence regarding the unity of interest and ownership prong for piercing the corporate

15

veil. Considering the plaintiffs' assertions, the ownership structure of RCCIE and other related entities, the factors to be considered in piercing the corporate veil, and the broad scope of what information may be relevant for discovery purposes, we find that the circuit court did not abuse its discretion in denying Vander Maten's motion for a protective order and ordering Vander Maten to produce his tax returns from 2011 through 2017. The circuit court correctly concluded that the requested tax returns may lead to admissible evidence for purposes of piercing the corporate veil of RCCIE.

¶ 33    Vander Maten asserted in the trial court and on appeal that his wife objected to the production of the requested tax returns. Vander Maten has not, however, cited to any affidavits, testimony, documents, or any other evidence, other than a bare assertion in his motion for a protective order regarding the requested tax returns, as proof of his wife's stance regarding the requested tax returns. Furthermore, Vander Maten has not cited to any authority that any such an objection may be asserted by a nonparty spouse. Thus, we reject Vander Maten's contention on this point.

¶ 34    We next consider the plaintiffs' request for documents related to the December 30, 2013, sale of the Rosewood Care Center and other related entities. The plaintiffs argued that these documents may lead to admissible evidence as to whether the assets of RCCIE were diverted from the corporation to the detriment of creditors. The circuit court again found that the requested tax returns may lead to admissible evidence regarding the unity of interest and ownership prong for piercing the corporate veil. After considering the factors for piercing the corporate veil and the broad scope of how we determine relevancy for discovery purposes, we find that the circuit court did not abuse its discretion in denying

16

Vander Maten's motion for a protective order and in ordering Vander Maten to produce the requested documents related to the December 30, 2013, sale of the Rosewood Care Center and other related entities.

¶ 35    Having determined that the circuit court's discovery order was not an abuse of discretion, we next address the contempt order from which Vander Maten appealed. As noted above, a party may test the correctness of a discovery order through an appeal of a contempt order. *Zagorski*, 2016 IL App (5th) 140056, ¶ 21. At Vander Maten's request, the circuit court found Vander Maten in "friendly" contempt and imposed a $50 sanction so that he could seek appellate review of the circuit court's discovery order. Therefore, the contempt order and monetary sanction are hereby vacated because the record shows that the contempt order was entered against Vander Maten for the purpose of testing the correctness of the discovery order on appeal.

¶ 36    For the foregoing reasons, we vacate the contempt order and monetary sanction, affirm the underlying discovery orders, and remand for further proceedings.

¶ 37    Affirmed in part and vacated in part; cause remanded.